**No. 25-1324**

# United States Court of Appeals
*for the*
# First Circuit

E. DAVID WESCOTT, an individual residing in Dedham, County of Hancock, State of Maine; RUSSELL JOHNSON BEAUPAIN, a Maine Limited Liability Company,

>    *Plaintiffs – Appellants*,

>                              v.

HON. VALERIE STANFILL, in their Official Capacity as Chief Justice, Maine Supreme Judicial Court; AMY QUINLAN, ESQ., in their Official Capacity as State Court Administrator for the State of Maine, Judicial Branch; MAINE JUSTICE FOUNDATION,

>    *Defendants – Appellees*,

MAINE BOARD OF OVERSEERS OF THE BAR,

>    *Defendant.*

---

On Appeal from the United States District Court for the District of Maine
No. 1:24-cv-00286, Hon. Lance E. Walker

---

### OPENING BRIEF OF APPELLANTS

---

Kyle Singhal
HOPWOOD & SINGHAL PLLC
1701 Pennsylvania Ave., N.W., #200
Washington, DC 20006
Telephone: (202) 769-4080
kyle@hopwoodsinghal.com

Stephen C. Smith
STEVE SMITH TRIAL LAWYERS
191 Water Street
Augusta, ME 04330
Telephone: (207) 622-3711
info@mainetriallaw.com

*Counsel for Appellants E. David Wescott and Russell Johnson Beaupain*

## DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Pursuant to FRAP 26.1 and 28(a), Appellants E. David Wescott (a natural person) and Russell Johnson Beaupain (a Maine Limited Liability Company) make the following disclosure:

1. Is any party a publicly held corporation or other publicly held entity? No.

2. Does any party have any parent corporations? No.

3. Is 10% or more of the stock of any party owned by a publicly held corporation or other publicly held entity? No.

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? No.

5. Is any party a trade association? No.

6. Does this case arise out of a bankruptcy proceeding? No.


Dated: July 17, 2025                              /s/ Kyle Singhal
                                                  Kyle Singhal
                                                  *Counsel for Appellants*

## **TABLE OF CONTENTS**

Table of Authorities ........................................................................... iii

Statement Regarding Oral Argument ...................................................... vi

Jurisdictional Statement ........................................................................1

Statement of the Issues Presented for Review .........................................2

Statement of the Case............................................................................3

    I.     Introduction ...............................................................................3

    II.    Relevant Factual Background ....................................................4

         a.  Maine's IOLTA Program ....................................................5

         b.  Maine Bar Rule 6 .............................................................5

         c.  Maine Justice Foundation...................................................6

         d.  IOLTA Recipient Organizations .........................................7

         e.  Appellants' Client-Retainer Transaction...............................8

    III.   Procedural History....................................................................9

Text of Rule Under Review (Maine Bar Rule 6)......................................10

Summary of the Argument....................................................................13

Argument............................................................................................15

    I.     THE DISTRICT COURT ERRED IN DISMISSING THE AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM .........................15

         A. The district court erred in holding that Appellants' use of the IOLTA program was not compelled by Maine Bar Rule 6.............................20

1.  The district court disregarded Appellants' factual allegation that no practicable alternative to the IOLTA exists. ...................................20

2.  The district court improperly drew a negative inference that, in the absence of the IOLTA program, no interest would accrue to Appellant Wescott's benefit. ...........................................................22

B.  The district court erred in holding that Appellants did not adequately plead a sufficient connection between their compelled use of the IOLTA program and the speech at issue (*i.e.*, the messages communicated by the organizations receiving IOLTA funds)............24

C.  Maine Bar Rule 6 fails First Amendment scrutiny .............................28

II.  THE DISTRICT COURT ERRED IN DISMISSING APPELLANTS' CLAIMS AGAINST MAINE JUSTICE FOUNDATION FOR LACK OF STANDING ..............................................................................................32

A.  MJF is a state actor for purposes of administering Rule 6.................33

B.  Appellants' harm is redressable by an injunction against MJF ..........36

Conclusion ......................................................................................................37

Certificate of Compliance ..............................................................................38

Certificate of Service ......................................................................................38

Addendum (District Court Order Granting Motion to Dismiss; Judgment)............39

## <u>TABLE OF AUTHORITIES</u>

### *Cases*

*Abood v. Detroit Bd. of Ed.*, 431 U.S. 209 (1977)................................. 17-19, 26, 30

*Baker v. Carr*, 369 U.S. 186 (1962).........................................................33

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)....................................22

*Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288 (2001)..........35

*Brown v. Legal Found. of Wash.*, 538 U.S. 216 (2003)............................... 23-24, 30

*Burton v. Wilmington Parking Authority*, 365 U.S. 715 (1961)....................... 35, 37

*Citizens United v. FEC*, 558 U.S. 310 (2010)...........................................19

*Cook v. Gates*, 528 F.3d 42 (1st Cir. 2008) .............................................15

*Flast v. Cohen*, 392 U.S. 83 (1968) ........................................................19

*Frudden v. Pilling*, 742 F.3d 1199 (9th Cir. 2014)....................................28

*Gaspee Project v. Maderos*, 13 F.4th 79 (1st Cir. 2021).........................28

*George v. Pacific-CSC Work Furlough*, 91 F.3d 1227 (9th Cir. 1996)..................35

*Gustavsen v. Alcon Labs., Inc.*, 903 F.3d 1 (1st Cir. 2018)....................................32

*Janus v. Am. Fed'n of State, Cty., & Mun. Emps.*, 585 U.S. 878 (2018) ........ *passim*

*Jarvis v. Vill. Gun Shop, Inc.*, 805 F.3d 1 (1st Cir. 2015) .......................................37

*Keller v. State Bar of Cal.*, 496 U.S. 1 (1990)..........................................30

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ...............................33

*Mangual v. Rotger-Sabat*, 317 F.3d 45 (1st Cir. 2003) ...........................34

*Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802 (2019) ..................... 34-35

*Muskrat v. United States*, 219 U.S. 346 (1911) ........................................................33

*Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 585 U.S. 755 (2018) ......................19

*N.H. Right to Life PAC v. Gardner*, 99 F.3d 8 (1st Cir. 1996)................................34

*Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1 (1st Cir. 2011)...........................4

*Perkins v. Londonderry Basketball Club*, 196 F.3d 13 (1st Cir. 1999).............. 35-36

*Roberts v. United States Jaycees*, 468 U.S. 609 (1984) ..........................................16

*Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49 (1st Cir. 2013) .............. 15, 21

*Santiago v. Puerto Rico*, 655 F.3d 61 (1st Cir. 2011) .............................................35

*Snyder v. Phelps*, 562 U.S. 443 (2011) ...................................................................17

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ..........................................................33

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181 (2023)................................................................................................. 28-30

*Vidal v. Elster*, 602 U.S. 286 (2024).......................................................................32

*Washington Legal Foundation v. Massachusetts Bar Foundation*, 993 F.2d 962 (1st Cir. 1993) ........................................................................................ vi, 4, 24-27

*W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624 (1943) ............................ 15, 19

*Wooley v. Maynard*, 430 U.S. 705 (1977) ......................................................... 15, 19

## *Statutes*

28 U.S.C. § 1291 .................................................................................1

28 U.S.C. § 1331 .................................................................................1

28 U.S.C. § 1343 .................................................................................1

28 U.S.C. § 2201 .................................................................................1

28 U.S.C. § 2202 .................................................................................1

## *Constitutional Provisions and Other Authorities*

Irving Brant, *James Madison: The Nationalist* (1948) ..............................4

Maine Bar Rule 6 ..................................................3, 5-8, 10-15, 20-22, 24, 28, 32-37

U.S. CONST. Am. I ............................................ 2, 4, 13, 15, 17, 19-20, 24-28, 31-33

U.S. CONST. Am. V ...........................................................................25

U.S. CONST. Am. XIV........................................................ 2, 4, 13, 15, 20

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellants request oral argument. This appeal requires the Court to determine whether a decision of the United States Supreme Court, *Janus v. American Federation of State, County, & Municipal Employees*, 585 U.S. 878 (2018), has overruled this Court's prior ruling in *Washington Legal Foundation v. Massachusetts Bar Foundation*, 993 F.2d 962 (1st Cir. 1993), such that mandatory IOLTA programs violate fundamental First and Fourteenth Amendment freedoms when they divert the interest accrued on client funds to causes that the client or the attorney finds repugnant. Appellants respectfully submit that, in light of the importance and potential complexity of the legal issues in this matter, oral argument will aid the Court.

## <u>JURISDICTIONAL STATEMENT</u>

The district court had jurisdiction under 28 U.S.C. §§ 1331, 1343, 2201, and

2202. This Court has jurisdiction under 28 U.S.C. § 1291.

**STATEMENT OF THE ISSUES PRESENTED FOR REVIEW**

I.      Whether the district court erred in dismissing Appellants' as-applied challenge to the constitutionality of Maine's IOLTA program for failure to state a claim on the grounds that Maine Bar Rule 6 does not compel Appellants' use of the IOLTA program and thus does not compel Appellants' speech, even though Appellants sufficiently pleaded that there is no practicable alternative to the IOLTA program available to them?

[This issue is addressed in Argument Section I.A.]

II.     Whether Appellants' speech is compelled (in violation of the First and Fourteenth Amendments) where recipient organizations use IOLTA funds to espouse positions on matters of substantial public concern that are repugnant to Appellants' sincerely held moral, ethical, religious, and political beliefs?

[This issue is addressed in Argument Sections I.B and I.C.]

III.    Whether the district court erred in holding that Maine Justice Foundation could not be a proper defendant, and that Appellants lack standing to sue it, because it is a private actor, even though its role in administering the IOLTA program is compelled by state law?

[This issue is addressed in Argument Section II.]

## STATEMENT OF THE CASE

### I.    Introduction

Like many states, Maine has an Interest on Lawyers' Trust Accounts ("IOLTA") program that collects the interest accrued on lawyer-held retainer funds and distributes it to nonprofit organizations. But unlike many states, Maine uses the interest—millions of dollars in some years—for "systemic advocacy" and "legislative lobbying" in support of various political causes. App. A10, A19.

Appellants—a law firm (Russell Johnson Beaupain, "RJB") and its client (E. David Wescott)—do not support these causes, which include "queer justice," "immigration justice," "Medicaid expansion," "racial equity," and facilitating "work permits for asylum seekers." App. A13-A15. They sincerely believe that the IOLTA-funded causes are "morally, ethically, religiously, and politically abhorrent." App. A22. But Maine Bar Rule 6 mandates that "*every* lawyer practicing or admitted to practice in Maine shall, as a condition thereof, be conclusively deemed to have consented to the [IOLTA] program." Maine Bar R. 6(g). Like it or not, if Appellants wish to have a lawyer-client relationship in which the lawyer holds the client's retainer funds during the representation, the interest from those funds *must* go to support causes that Appellants oppose rather than accruing to the client's benefit.

Thomas Jefferson stated that "to compel a man to furnish contributions of money for the propagation of opinions which he disbelieves is sinful and tyrannical."

Irving Brant, *James Madison: The Nationalist* 354 (1948). And, thankfully for Appellants, the Supreme Court has recently confirmed that requiring individuals to provide financial support for causes they detest "seriously impinges on First Amendment rights," counts as compelled speech, and "cannot be casually allowed." *Janus v. Am. Fed'n of State, Cty., & Mun. Emps.*, 585 U.S. 878, 893 (2018). That is why, relying on *Janus*, Appellants brought this challenge to Maine's IOLTA program as compelling their speech and their subsidy in violation of fundamental First and Fourteenth Amendment freedoms.

The district court viewed its hands as tied by a decision of this Court that predates *Janus* by 25 years: *Washington Legal Foundation v. Massachusetts Bar Foundation*, 993 F.2d 962 (1st Cir. 1993). But *Washington Legal Foundation* relied on old caselaw that the Supreme Court expressly disavowed in *Janus*. Appellants thus ask the Circuit to make clear that *Washington Legal Foundation* is no longer good law, that it does not foreclose their challenge, and that *Janus* instead prohibits Maine's IOLTA program from compelling Appellants to support the causes it funds.

## II.    Relevant Factual Background

The following facts are taken from Appellants' Amended Complaint, App. A7-A24. Because this appeal arises from the grant of a motion to dismiss, this Court must take Appellants' factual allegations as true "even if seemingly incredible." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011).

## A. Maine's IOLTA Program.

In 2007, the Maine Supreme Judicial Court ("Law Court") made it mandatory for lawyers in Maine to participate in the State's IOLTA program. App. A19. In 2019, a working group established by the Law Court published its report, App. A48-A64, approving the use of IOLTA funds for "systemic advocacy and legislative lobbying." App. A19.  And in 2020, following a public hearing, the Law Court decided to continue to allow such usage of IOLTA funds. *Id.* The use of IOLTA funds for systemic advocacy diverts funds from other uses such as providing direct legal services to the poor. App. A21.

## B. Maine Bar Rule 6.

Maine Bar Rule 6 ("Rule 6") is the mechanism by which the Law Court implements Maine's IOLTA program.[1] Rule 6 requires Appellant RJB to maintain an IOLTA account and to certify its IOLTA compliance annually. App. A21; Rule 6(b).

There is no practicable alternative available to Appellants for the handling of client retainer funds. App. A22. If there were, Appellants would have used that alternative rather than having RJB store Wescott's retainer funds in a mandatory IOLTA account. *Id.* To be sure, a provision in Rule 6(c)(1) states that IOLTA-

---

[1] The full text of the relevant sections—6(a), (b), (e), and (g)—appears at pages 10-12 of this brief, *infra*.

qualifying "funds are small in amount or held for a short period of time such that they cannot earn interest or dividends for the client in excess of the costs incurred to secure such income." Rule 6(c)(1). But the Law Court and its designees—not Appellants—are the arbiters of IOLTA compliance, and Rule 6 imposes upon Appellants an imminent threat of severe penalties—up to and including disbarment for RJB's attorneys—if Appellants fail to store client funds in compliance with Rule 6. App. A22. Appellants thus hold a sincere belief that they are compelled by Rule 6 to participate in the IOLTA program even if there exists some theoretical possibility of storing a client's funds in a separate interest-bearing account that would permit the interest to accrue to the client's benefit. *Id.*

### C. Maine Justice Foundation.

When lawyers place client retainer funds into a Maine IOLTA account, the interest is automatically transferred to the Maine Justice Foundation ("MJF"), a nonprofit organization. App. A10. In 2021, 2022, and 2023, MJF received $882,668; $973,621; and $2,414,929; respectively, in IOLTA funds. *Id.*

Although MJF is a "private" entity, it is directed expressly by Rule 6 to establish IOLTA-related guidelines (such as for determining which banks are eligible to offer IOLTA accounts), to deduct fees (amounting to up to 22% the collected IOLTA funds) for its role in administering the IOLTA program, and to distribute the remaining funds so as "to provide services that maintain and enhance

resources available for access to justice in Maine, including those services that achieve improvements in the administration of justice and provide legal services, education, and assistance to low-income, elderly, or needy clients." Rule 6(e). MJF chooses the organizations that receive these funds through a "murky" process that favors organizations that "are almost universally 'left-wing' in their political orientation." App. A20.

### D. IOLTA Recipient Organizations.

MJF has chosen six organizations to receive IOLTA funds: (1) Cumberland Legal Aid Clinic (an organization that has sent student attorneys to the U.S.-Mexico border to assist entering asylum-seekers, and which gives "priority to potential clients based on sexual orientation and immigration status," App. A11); (2) Immigration Legal Advocacy Project (an organization that proclaims, "there cannot be immigration justice without queer justice," App. A13); (3) Legal Services for the Elderly (an organization that employs a full-time public policy advocate to engage in systemic advocacy, App. A14); (4) Maine Equal Justice (an organization that advocates Medicaid expansion and programs that "eliminate disparities for racial and ethnic populations," App. A15); (5) Pine Tree Legal Assistance (an organization that "prioritize[s] . . . Maine residents most affected by racism and discrimination," App. A16); and (6) Volunteer Lawyers Project (an organization that engages in systemic advocacy and promotes anti-discrimination seminars, App. A18).

### E. Appellants' Client-Retainer Transaction.

In June 2023, Appellant Wescott transmitted a $2,500 retainer to Appellant RJB for deposit in RJB's mandatory IOLTA account. App. A22. Because this was an advance payment, it accrued interest during the course of RJB's representation of Wescott. *Id.* But for Rule 6 and the IOLTA program, the interest would have accrued to Wescott's benefit. *Id.* But the interest instead went to MJF. *Id.*

RJB has no practicable alternative to participating in the IOLTA program because of the threat of enforcement and penalties, including disbarment, that would accompany its decision not to do so. *See* App. A22-23. Wescott has no choice but to pay his retainer funds to a law firm that participates in the IOLTA program. *Id.* The alternative of hiring counsel outside the State of Maine, for instance, is not practicable. App. A23.

Wescott sincerely believes that, by contributing the interest on his funds to the IOLTA-supported causes, he has been compelled to support causes that he finds morally, ethically, religiously, and politically abhorrent. *Id.* RJB sincerely believes that, by participating in the IOLTA program, it has been compelled to support causes that it finds morally, ethically, religiously, and politically abhorrent. *Id.* RJB's participation in the IOLTA program also imposes administrative costs on RJB, and it furthers the public perception that RJB endorses the views of the organizations to which MJF distributes IOLTA funds. App. A21.

8

### III.    Procedural History

Appellants filed their Complaint in the District of Maine on August 8, 2024, and subsequently filed their Amended Complaint on September 12, 2024. App. A3-A4, A7. The Amended Complaint named four defendants: (1) Hon. Valerie Stanfill, Chief Justice of the Law Court ("Stanfill"); (2) Amy Quinlan, State Court Administrator of the Maine Judicial Branch ("Quinlan"); (3) Maine Justice Foundation; and (4) the Maine Board of Overseers of the Bar. App. A9-10.  The State Defendants (Stanfill and Quinlan) and the Maine Board of Overseers of the Bar filed a joint motion to dismiss. App. A25. MJF filed a separate motion to dismiss. App. A87. Appellants conceded that the Board of Overseers was not a proper defendant but otherwise opposed the motions to dismiss. App. A99, A111. The State Defendants and MJF replied. App. A116, A125.

On April 2, 2025, the district court granted the motions to dismiss, holding that (1) Appellants failed to state a claim because they could not demonstrate that their use of the IOLTA program was compelled or that the recipient organizations' use of their IOLTA funds for advocacy and lobbying amounted to compelled speech and (2) Appellants lacked standing to sue MJF. App. A133-A139. That same day, the district court issued its judgment, and Appellants timely filed their notice of appeal. App. A140-A141.

This appeal follows.

## <u>TEXT OF RULE UNDER REVIEW</u>
## <u>(MAINE BAR RULE 6)</u>

For the Court's convenience, the full text of Maine Bar Rule 6(a), (b), (e), and (g) is provided below in the same format in which it is publicly available online at this link: https://mebaroverseers.org/regulation/bar_rules.html?id=638764.

**RULE 6. Maintenance of Trust Accounts in Approved Institutions: IOLTA**

**(a)     Clearly Identified Trust Accounts in Eligible Institutions Required.** Every lawyer admitted to practice in Maine shall deposit all funds held in trust in this jurisdiction in accordance with Rule 1.15 of the Maine Rules of Professional Conduct in accounts clearly identified as IOLTA accounts in eligible institutions and shall take all steps necessary to inform the depository institution of the purpose and identity of the accounts. Funds held in trust include funds held in any fiduciary capacity in connection with a representation, whether as trustee, agent, guardian, executor or otherwise.

**(b)     Reporting and Certification**[.] Every lawyer admitted to practice in Maine shall annually certify to the Board in connection with the annual renewal of the lawyer's registration, that, to the lawyer's knowledge after reasonable investigation:

(1)     (A) the lawyer or the lawyer's law firm maintains at least one IOLTA account; and (B) the lawyer has taken reasonable steps to ensure that all client funds are held in IOLTA accounts meeting the requirements of these Rules; or

(2)     the lawyer is exempt from maintaining an IOLTA account because the lawyer:

(A)     is not engaged in the private practice of law;
(B)     does not have an office within Maine;
(C)     is (1) a judge employed full-time by the United States Government, the State of Maine or another state government; (2) on active duty with the armed services; or (3) employed full-time as an attorney by a local, state, or federal government, and is not otherwise engaged in the private practice of law;
(D)     is counsel for a corporation or non-profit organization or a teacher or professor employed by an educational institution, and is not otherwise engaged in the private practice of law;

(E)     has been exempted by an order of the Court that is cited in the certification; or

(F)     holds no client funds.

**(c)     IOLTA Account Requirements.**

[omitted]

**(d)     Verification of Bank Accounts.**

[omitted]

**(e)     Maine Justice Foundation.**

(1)     *IOLTA Accounting*.

(A)     Beginning in 2020, on or before April 15 of each year, the Maine Justice Foundation shall complete a financial analysis of the IOLTA funds received and distributed by the Foundation during the previous calendar year and shall prepare an Annual Financial Report that will be available to the public.

(B)     The Annual Financial Report shall

(i)     Be prepared according to generally accepted accounting principles;

(ii)     Include the specific allocation of IOLTA funds to the various providers, programs, and projects for the previous year;

(iii)     Include the total funds that were set aside for reserves;

(iv)     Include the total IOLTA funds that were allocated to administrative costs of the Maine Justice Foundation; and

(v)     Include the categories of the rates paid by participating Banks.

(C)     Copies of the Annual Financial Report of IOLTA funds shall be provided to the Supreme Judicial Court on or before April 15 each year.

(2)     *Administrative Costs of the Maine Justice Foundation*. Effective in the calendar year beginning on January 1, 2021, no more than 22% of annual IOLTA funds may be allocated to the administrative costs of the Maine Justice Foundation, except that a floor of $120,000 in administrative costs from IOLTA funds is hereby established. To allow prospective budgeting of administrative costs, the calculation

of the 22% for any upcoming calendar year shall be determined by computing the average of the annual IOLTA funds received during the three calendar years preceding the calendar year before the year for which the administrative budget is being established and multiplying that number by 0.22.[1]

(3)      *Use of IOLTA Funds.* IOLTA funds received and distributed pursuant to this Rule are intended to provide services that maintain and enhance resources available for access to justice in Maine, including those services that achieve improvements in the administration of justice and provide legal services, education, and assistance to low-income, elderly, or needy clients.

**(f)      Receipt of Voluntary Contributions.**
[omitted]

**(g)      Consent by Lawyers.** Every lawyer practicing or admitted to practice in Maine shall, as a condition thereof, be conclusively deemed to have consented to the reporting, verification, and production requirements mandated by this rule. Such consent specifically includes authorization to the disclosure by financial institutions of all bank or trust account records and information as requested of them by Bar Counsel for the purposes of verification and investigation pursuant to Rule 6(d).

**(h)      Costs.**

[omitted]

# SUMMARY OF THE ARGUMENT

*First*, the district court erred in holding that Appellants failed to state a First Amendment claim under *Janus v. American Federation of State, County, & Municipal Employees*, 585 U.S. 878 (2018). Appellants amply alleged that they have no choice but to participate in Maine's IOLTA program: the "alternatives"—such as not taking a client retainer, or not using IOLTA accounts and hoping for the best—are not practicable. Moreover, the threat of severe penalties from noncompliance cautions Appellants toward using an IOLTA account when there is any doubt about its mandatory nature. As a result, interest on retainer funds that would otherwise accrue to the client's benefit is diverted—by Appellees—to organizations that engage in lobbying and advocacy on matters of substantial public concern. That amounts to a compelled subsidy under *Janus*. And because no compelling interest justifies such a subsidy, it violates the First Amendment as incorporated through the Fourteenth Amendment against the State of Maine.

*Second*, the district court erred in holding that Appellants lack standing to sue Maine Justice Foundation ("MJF") for want of redressability. Although MJF is a private nonprofit organization, it is a state actor for purposes of its joint participation with the State in administering and implementing the IOLTA program. That is because Maine Bar Rule 6 expressly mandates MJF to play the core role in administering the program, collecting the funds, and distributing the funds. MJF is

thus a proper defendant for a constitutional challenge to the IOLTA program. And because MJF chooses the recipient organizations—and does so in a way that diverts IOLTA funds towards lobbying and advocacy on matters of substantial public concern, rather than towards providing viewpoint-neutral legal aid to the poor—an order enjoining MJF from such unconstitutional actions would redress Appellants' harms.

This Court should thus reverse the district court's dismissal of Appellants' Amended Complaint, declare Maine Bar Rule 6 unconstitutional as applied to Appellants on the facts alleged in the Amended Complaint, and remand this matter for further proceedings.

# **ARGUMENT**

## **I.    THE DISTRICT COURT ERRED IN DISMISSING THE AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM.**

### *Standard of Review*

Appellants bring an as-applied challenge to Maine Bar Rule 6 ("Rule 6") as it is currently implemented by Appellees. To prevail, Appellants need not prove that Rule 6 is unconstitutional in every application; rather, they must establish only that it plausibly infringes on their own First Amendment rights. *Cook v. Gates*, 528 F.3d 42, 56 (1st Cir. 2008). Indeed, at this stage of the litigation, Appellants need only *allege* such infringement. *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 52-53 (1st Cir. 2013). This Court reviews the district court's dismissal of Appellants' Amended Complaint *de novo*, and, in doing so, it must accept Appellants' factual allegations as true, drawing "all reasonable inferences therefrom" in Appellants' favor. *Id.* For the reasons that follow, this Court should reverse.

### *First Amendment Principles*

The First Amendment, as incorporated through the Fourteenth Amendment, forbids states from abridging "both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977) (forbidding a state from requiring individuals to display the official state motto on their license plates); *see also W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943) (forbidding states from requiring students to say the pledge of allegiance). It likewise

15

protects both the right to associate oneself with various causes and the corresponding freedom *not* to associate. *Roberts v. United States Jaycees*, 468 U.S. 609, 623 (1984) ("There can be no clearer example of an intrusion into the internal structure or affairs of an association than a regulation that forces the group to accept members it does not desire. [. . .] Freedom of association therefore plainly presupposes a freedom not to associate.").

The Supreme Court has affirmed that *compelled* speech causes "additional damage" beyond the evils worked by *suppression* of speech: "Forcing free and independent individuals to endorse ideas they find objectionable is always demeaning, and for this reason, one of our landmark free speech cases said that a law commanding 'involuntary affirmation' of objected-to beliefs would require 'even more immediate and urgent grounds' than a law demanding silence." *Janus v. Am. Fed'n of State, Cty., & Mun. Emps.*, 585 U.S. 878, 893 (2018) (quoting *Barnette*, 319 U.S. at 633).

In *Janus*, the Court confronted an Illinois scheme that required public employees either to join a union or, alternatively, to pay an "agency fee" (a percentage of union dues) that did not directly fund the union's "political and ideological projects" but instead funded the union's collective bargaining, lobbying, litigation, and various other activities and unspecified services. 585 U.S. at 887-88. A public employee (Janus) sued the union, alleging that "he oppose[d] 'many of the

public policy positions that [it] advocates,' including the positions it takes in collective-bargaining." *Id.* at 889. Janus alleged that, "if he had the choice, he "would not pay any fees or otherwise subsidize [the Union]." *Id.* But he had no choice, and so his employer withdrew an agency fee of $44.58 per month from his paycheck. *Id.*

The Supreme Court struck down the agency-fee program as violating the First Amendment, holding that "[c]ompelling a person to *subsidize* the speech of other private speakers raises similar First Amendment concerns" to compelling a person to *speak*. *Janus*, 585 U.S. at 893. Under then-existing law, the agency-fee revenue could not be used for political or ideological projects that were "not germane to collective bargaining." *Abood v. Detroit Bd. of Ed.*, 431 U.S. 209, 219 (1977). But the Court in *Janus* recognized that the revenue could nevertheless be used to support contentious viewpoints *within* the collective-bargaining context:

> Unions can also speak out ***in collective-bargaining*** on controversial subjects such as climate change, the Confederacy, sexual orientation and gender identity, evolution, and minority religions. These are sensitive political topics, and they are undoubtedly matters of profound "value and concern to the public." *Snyder v. Phelps*, 562 U.S. 443, 453 (2011). We have often recognized that such speech "occupies the highest rung of the hierarchy of First Amendment values" and merits "special protection." *Id.* at 452.

*Janus*, 585 U.S. at 913-14 (emphasis added).

It did not matter that the Janus paid only $44.58 per month. It did not matter that Janus's funds were pooled with those of many thousands of other employees'

funds, making it impossible to trace Janus's specific contribution to the support of a specific viewpoint. And it did not matter that Janus had the (Hobson's) choice to work somewhere else. The Supreme Court held squarely that "this arrangement violates the free speech rights of nonmembers by compelling them to subsidize private speech on matters of substantial public concern." *Id.* at 885-86.

In reaching that conclusion, it applied "exacting scrutiny," wherein the State must show "a compelling state interest that cannot be achieved through means significantly less restrictive of associational freedoms." *Id.* But it applied exacting scrutiny (rather than strict scrutiny) only because the Court found it "unnecessary to decide the issue of" whether strict scrutiny should apply, given that "under even the more permissive" standard of "exacting scrutiny," the agency fee was plainly unconstitutional. *Id.* at 895. The State's purported interest of achieving "labor peace" (*i.e.*, avoiding conflict that might arise from the existence of more than one union) did not require the imposition of mandatory agency fees because, *inter alia*, unions elsewhere functioned just fine without such fees, and because union aims could be achieved through other less-restrictive means such as requiring non-members to pay for union services (like representation in disciplinary matters) if and when they sought out such services. *Id.* at 899-901.

In reaching its conclusion, *Janus* also declared that *Abood*, which had upheld agency fees as constitutional, "was wrongly decided and is now overruled." *Janus*,

585 U.S. at 930. And it did so expressly on First Amendment grounds. *Id.* at 926 ("It is an odd feature of our First Amendment cases that political patronage has been deemed largely unconstitutional, while forced subsidization of union speech (which has no such pedigree) has been largely permitted. [. . .] By overruling *Abood*, we end the oddity of privileging compelled union support over compelled party support and bring a measure of greater coherence to our First Amendment law.").

Other cases buttress the teaching from *Janus* that the First Amendment forbids the government from compelling individuals to support viewpoints that they oppose. *See, e.g.*, *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 585 U.S. 755, 760 (2018) (upholding the right of pro-life pregnancy clinics to provide care without being compelled to distribute notices informing patients of free or low-cost abortion providers); *Wooley*, 430 U.S. at 717; *Barnette*, 319 U.S. at 642.

Two more principles bear mention. First, it is well settled that how one spends money is inextricably intertwined with the causes one supports—and is thus a close surrogate for speech. *See, e.g.*, *Citizens United v. FEC*, 558 U.S. 310, 339 (2010) ("Section 441b's prohibition on corporate independent expenditures is thus a ban on speech"). Second, a plaintiff challenging an unconstitutional expenditure of money need not trace specific dollars from source to destination in order to enjoin the invidious expenditure. *See, e.g.*, *Flast v. Cohen*, 392 U.S. 83, 102-04 (1968) (permitting taxpayers to challenge Congress's expenditure of federal tax dollars in

violation of the Establishment Clause even though the challenger could not possibly trace the taxpayer's own tax dollars, which were necessarily pooled with the tax dollars of millions of other taxpayers, to a specific invidious expenditure).

These principles together make clear that a state violates the First and Fourteenth Amendment freedom against compelled speech when it takes funds that would otherwise belong to a citizen and uses those funds to support causes that the citizen opposes.

### A. The district court erred in holding that Appellants' use of the IOLTA program was not compelled by Maine Bar Rule 6.

The district court dismissed the Amended Complaint for failure to state a claim, holding that Appellants had failed to allege sufficient facts to establish that the IOLTA program compels their participation in the first place. App. A136. And it held that, even if it did compel their participation, the use of Appellants' funds did not amount to compelled speech because Appellants failed to demonstrate "a sufficient connection between their allegedly compelled action and the speech at issue." App. A137. Both holdings are incorrect.

### 1. The district court disregarded Appellants' factual allegation that no practicable alternative to the IOLTA exists.

The district court credited the State Defendants' position that "RJB could structure its clients' payments to avoid Rule 6 entirely." App. A136. That disregarded, contrary to the pleading-stage standard, Appellants' allegations that

"[t]here is no practicable alternative available to Plaintiffs RJB and Wescott to store client retainer funds other than to maintain an IOLTA account" and that, "[i]f there were any practicable alternative available, Plaintiffs RJB and Wescott would employ that alternative." App. A22.

The district court cited, as a basis for its holding, a provision of Rule 6 that defines IOLTA-qualifying funds as those that "are small in amount or held for a short period of time such that they cannot earn interest or dividends for the client in excess of the costs incurred to secure such income." Rule 6(c)(1). But the Law Court and its designees—not Appellants—are the arbiters of IOLTA compliance, and Rule 6 imposes upon Appellants an imminent threat of severe penalties—up to and including disbarment for RJB's attorneys—if Appellants fail to store client funds in compliance with Rule 6. App. A22. Appellants thus hold a sincere belief that they are compelled by Rule 6 to participate in the IOLTA program even if there exists some theoretical possibility of storing a client's funds in a separate interest-bearing account that would permit the interest to accrue to the client's benefit. *Id.* At the pleading stage, Appellants are entitled to the "reasonable inference" that Rule 6 does not provide any mechanism for them to opt out of IOLTA participation. *Rodríguez-Reyes*, 711 F.3d at 52. Their participation is compelled.

### 2. The district court improperly drew a negative inference that, in the absence of the IOLTA program, no interest would accrue to Appellant Wescott's benefit.

The district court further rejected Appellants' allegation that, were it not for the IOLTA program, "interest would otherwise accrue to Wescott's benefit." App. A138 (quoting Am. Compl. ¶ 82, App. A14). The district court wrote:

> That is simply false. Unless RJB is mismanaging Wescott's funds, absent the IOLTA program Wescott would not see a penny of interest as it would not cover the financial institution's cost of handling his funds. While I accept well-plead [*sic*] facts as true, I am not "bound to accept as true a legal conclusion couched as a factual allegation."

App. A138-A139 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

This was erroneous because the district court presumed, as a factual inference drawn *against* rather than in favor of Appellants, that the only reason RJB would be storing Wescott's retainer funds in an IOLTA account rather than in a separate, non-IOLTA interest-bearing account is because RJB was "mismanaging" the funds. App. A138. The proper inference to draw in RJB's favor is instead that if RJB is in doubt about whether a retainer is sufficiently large (or will be held for a sufficiently long period) to permit its deposit into a separate, non-IOLTA interest-bearing account, then RJB feels compelled to err on the side of using an IOLTA account so as to avoid the threat of enforcement and punishment for noncompliance. *See* App. A22-A23. Appellants have sufficiently pleaded that Rule 6 compels their participation in the IOLTA program and that they feel compelled to participate in the program even

though they are thereby compelled to support politics and ideologies that they vehemently oppose.

Notably, the district court quoted *Brown v. Legal Found. of Wash.*, 538 U.S. 216, 239-40 (2003), in support of the inference it drew against Appellants. App. A138. The district court's quote is notable because it specifically quoted the Supreme Court's language that recognized that the potential, if any, for client retainer funds to generate net interest to a client is a "factual finding" and not a legal conclusion:

> The District Court was therefore entirely correct when it made the ***factual finding*** that in no event can the client-depositors make any net return on the interest accrued in these accounts. Indeed, if the funds were able to make any net return, they would not be subject to the IOLTA program.

App. A138 (quoting *Brown*, 538 U.S. at 239-40) (emphasis added). Yet the district court here ruled that Appellants' allegation—*i.e.*, that the interest on Wescott's retainer "would otherwise accrue to Wescott's benefit" in the absence of the IOLTA program—was "a legal conclusion couched as a factual allegation." App. A139.

*Brown* had come to the Supreme Court on summary judgment—not at the pleading stage—so it was proper for the Court there to review the district court's own factual findings in light of the evidence of record. *Brown*, 538 U.S. at 230. And the evidence in that case showed that, unlike with Maine's IOLTA program, there was a "categorical requirement in Washington's IOLTA program that mandate[d]

the choice of a non-IOLTA account when net interest can be generated for the client." *Id.* at 240. Such a requirement would leave no doubt that a law firm was not only able to, but was required to, use a non-IOLTA account in circumstances where the retainer funds could accrue to the client's benefit. But no such requirement exists in Rule 6. *See* Rule 6(b) (listing six exemptions to the IOLTA program, including an exemption for a lawyer who "holds ***no*** client funds," but not including any exemption for a lawyer who, for instance, reasonably believes that his client funds will accrue sufficient interest to provide a net return to the client) (emphasis added).

*Brown* is also distinguishable in that it contains no discussion of the threat of enforcement, which Appellants rely on to assert that they feel compelled to use an IOLTA account to store client retainers. And, more broadly, the plaintiffs in *Brown* raised a regulatory-taking challenge, not a First Amendment challenge. *Brown*, 538 U.S. at 235. *Brown* does not decide this case.

**B. The district court erred in holding that Appellants did not adequately plead a sufficient connection between their compelled use of the IOLTA program and the speech at issue (*i.e.*, the messages communicated by the organizations receiving IOLTA funds).**

The district court also credited the State Defendants' position that Appellants failed to demonstrate "a sufficient connection between their allegedly compelled action and the speech at issue." App. A137. It relied on this Court's 1993 opinion in *Washington Legal Foundation v. Massachusetts Bar Foundation*, 993 F.2d 962, 978

(1st Cir. 1993), which upheld the Massachusetts IOLTA program against both First and Fifth Amendment challenges.

There, as to the First Amendment challenge, this Court first held that the challengers (which included lawyers and clients) had standing to sue and then considered whether their participation in the IOLTA program was in fact compelled even though there were theoretical options to avoid using an IOLTA account. 993 F.2d at 978. The Court held that the challengers' participation was in fact compelled in light of the challengers' allegations and the reasonable inferences to which they were entitled:

> The IOLTA Rule obligates lawyers to deposit client funds which they hold for short terms or in minimal amounts into IOLTA accounts. The plaintiffs allege facts which, when taken as true, establish that avoiding the IOLTA Rule has significantly limited Attorney Tuttle's practice of law and negatively affected his livelihood. Attorney Howes alleges that he has had to comply with IOLTA to maintain his practice of law despite his belief that the IOLTA Rule compels him to support politics and ideologies with which he disagrees.

> Claimants cannot be required by government action to relinquish First Amendment rights as a condition of retaining employment. As alleged by the plaintiffs, the burden on Tuttle and Howes of avoiding the IOLTA Rule is more than an inconvenience, although it is less extreme than forcing loss of employment. Reviewing the dismissal of their claims, we take the plaintiffs' factual allegations as true and we draw the inference in their favor that they cannot engage in the full practice of law without holding client funds which would trigger compliance with the IOLTA Rule. Therefore, based on the stated assumptions and inference, the IOLTA Rule is compulsory as to the two plaintiffs who are lawyers for purposes of deciding this case.

A different question is presented as to the compulsory effect of the IOLTA Rule on plaintiffs who are clients. Although the IOLTA Rule does not directly regulate clients, its effect is compulsory because lawyers generally deposit appropriate funds from clients into IOLTA accounts without the knowledge or consent of their clients. Therefore, the IOLTA Rule effectively coerces clients' compliance through the practices of their lawyers.

993 F.2d at 978 (internal citations omitted).

Having decided that the challengers' *participation* in the IOLTA program was compelled, the Court then went on to decide whether the program compelled their *speech*. *Id.* at 978-80. It held that the program did not—but its holding rested expressly on *Abood*, which the Supreme Court disavowed in *Janus*. *Wash. Legal Found.*, 993 F.2d at 978-80. Under *Abood*, a compelled subsidy was permissible so long as it did not directly support "political or ideological causes that were not germane to the collective-bargaining purpose of the agency-shop requirement." *Wash. Legal Found.*, 993 F.2d at 979 (quoting *Abood*, 431 U.S. at 235-36). The catch is that *Abood*'s language left the door wide open to compelled subsidies supporting political or ideological causes that *were* germane to collective bargaining. But in *Janus*, the Supreme Court made clear that any compelled subsidy of "private speech on matters of substantial public concern" is anathema to the First Amendment. *Janus*, 585 U.S. at 885-86. And, whereas *Washington Legal Foundation* purported to require more than a challenger's own averments to establish "a connection between dissenters and the organization so that dissenters reasonably understand that

26

they are supporting the message propagated by recipient organizations," 993 F.2d at 979, *Janus* removed any such barrier, crediting Janus's own statements that he opposed the union's positions. 585 U.S. at 889. *Washington Legal Foundation* is, therefore, no longer good law. It stems from an era that wrongfully permitted compelled subsidies of speech on matters of public concern—what *Janus* referred to as an "anomaly" in the Court's "First Amendment jurisprudence." *Id.* at 925.

Even if *Washington Legal Foundation* retains some vitality, it is distinguishable: there, the Court wrote that the interest generated was "not the clients' money," 993 F.2d at 980. But here, Appellants have alleged that, but for the IOLTA program, interest on at least certain retainer funds would accrue to the client's benefit. And, whereas in *Washington Legal Foundation* the Court found that the IOLTA program does not "require any other expenditures or efforts by the plaintiffs," *id.*, Appellants here have alleged that the program imposes "significant costs" including "costs of regulatory compliance." App. A19.

Finally, the district court cited *Washington Legal Foundation* for the proposition, also quoted above, that "there must be a connection between dissenters and the organization so that ***dissenters*** reasonably understand that they are supporting the message propagated by the recipient organizations." App. A137 (quoting *Wash. Legal Found.*, 993 F.2d at 979) (emphasis added). Thus, even if *Washington Legal Foundation* is still good law, and even if there must indeed be

such a connection, there *is* such a connection here. The quoted language requires the "dissenters" (*i.e.*, Appellants) to understand that their funds are supporting the recipient organizations' messages. The Amended Complaint makes clear that they do—and that they vehemently oppose those messages. App. A13-A15, A22. The district court erred in holding that Rule 6 does not compel Appellants' speech.

### C. Maine Bar Rule 6 fails First Amendment scrutiny.

Because Appellants adequately pleaded that Rule 6 compels their participation in the IOLTA program and thereby compels their speech, *Janus* controls—and *Janus* requires reversal.

In the context of compelling ordinary individuals to support messages they oppose, courts apply strict scrutiny, not the less-searching "exacting scrutiny" test. *See Gaspee Project v. Maderos*, 13 F.4th 79, 84-85 (1st Cir. 2021) (explaining that strict scrutiny typically applies to regulations that burden political speech and departing from that, so as to apply the lower "exacting scrutiny" standard, only because the case before it involved "disclosure and disclaimer regimes" rather than ordinary speech); *Frudden v. Pilling*, 742 F.3d 1199, 1207 (9th Cir. 2014) ("Because RGES compels students to endorse a particular viewpoint, strict scrutiny applies.").

The "daunting two-step examination" called "strict scrutiny" requires the State to establish a compelling interest and to prove that the law in question (here, the IOLTA program) is truly necessary to achieve that interest. *Students for Fair*

*Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 206 (2023).

The Supreme Court in *Students for Fair Admissions*, however, made clear that "elusive" and "[in]coherent" goals are never compelling. There, universities argued that permitting racial preferences (so-called "affirmative action") in college admissions decisions furthered compelling interests:

> Harvard identifies the following educational benefits that it is pursuing: (1) "training future leaders in the public and private sectors"; (2) preparing graduates to "adapt to an increasingly pluralistic society"; (3) "better educating its students through diversity"; and (4) "producing new knowledge stemming from diverse outlooks." UNC points to similar benefits, namely, "(1) promoting the robust exchange of ideas; (2) broadening and refining understanding; (3) fostering innovation and problem-solving; (4) preparing engaged and productive citizens and leaders; [and] (5) enhancing appreciation, respect, and empathy, cross-racial understanding, and breaking down stereotypes."

*Id.* at 214 (internal citations omitted).

The Supreme Court called these goals "commendable" but resoundingly rejected ***all*** of them as "not sufficiently coherent for purposes of strict scrutiny." *Id.* The universities' interests were too elusive, too immeasurable, and too imprecise to qualify as compelling interests. *Id.* at 214-15. ("Comparing respondents' asserted goals to interests we have recognized as compelling further illustrates their elusive nature.").

If none of those interests are compelling for the reasons set forth in *Students for Fair Admissions*, then Maine's claimed interest ("to improve access to justice in Maine," App. A41) must likewise fall far short. Improving access to justice may well

be a worthy goal, but it is elusive, incoherent, immeasurable, and imprecise—at least as much so as the universities' goals were in *Students for Fair Admissions*. For that reason (*i.e.*, the lack of a compelling interest), the IOLTA program fails strict scrutiny.

Appellees below supported their compelling-interest argument with decisions of various courts that all predate *Students for Fair Admissions* and are thus abrogated to the extent that they uphold an incoherent, elusive goal as a compelling interest. *See* App. A41-A42. The Supreme Court in *Brown* stated that the IOLTA program in that case was "serving the compelling interest in providing legal services to literally millions of needy Americans"—but there, unlike here, the IOLTA program *actually funded indigent litigants' legal fees* rather than systemic advocacy. 538 U.S. at 232. Likewise, the Supreme Court in *Keller v. State Bar of California* upheld bar membership dues in part on the grounds that the State could use those funds to improve "the quality of legal services," 496 U.S. 1, 13 (1990)—but nothing in that opinion contemplates funding systemic advocacy or lobbying for specific causes, and, in any event, *Keller* relied on *Abood*, which has since been overruled by *Janus*.

Moreover, even under "exacting scrutiny"—which the Court applied in *Janus* not because it was necessarily the appropriate scrutiny but rather because the compelled-speech regime failed *even the lower standard* of exacting scrutiny—the IOLTA program still fails. Under exacting scrutiny, the State must prove "a

compelling state interest that cannot be achieved through means significantly less restrictive of associational freedoms." *Janus*, 585 U.S. at 894. Although courts have referred to exacting scrutiny as "a less intense standard of constitutional review," *Gaspee Project*, 13 F.4th at 85, it nevertheless requires a compelling interest—and the IOLTA program must therefore fail for the same reason it fails strict scrutiny: it furthers no compelling interest at all. Even if "improving access to justice," App. A122, were a qualifying compelling interest, that interest can readily be achieved through alternative means like using tax dollars or voluntary contributions to fund the State's desired initiatives. Admittedly, if the State attempted to use tax dollars to fund these causes, it might be met with disagreement from the taxpayers. But perhaps that is precisely why the First Amendment prohibits the State from compelling individuals to subsidize such causes in the first place.

The agency fee in *Janus* could not be used for "the union's political and ideological projects"—and yet it was declared unconstitutional. *Id.* at 887. But the Law Court considered and *rejected* even that sort of modest limitation on the use of IOLTA funds, preferring a narrower rule that permitted more politically charged uses of the funds. *See* App. A52 (Majority Report, Exh. A to Motion to Dismiss, at 4 n.6) (explaining that "additional restrictions on the spending of IOLTA funds 'for political or ideological activities'" were rejected in 2019). There is thus *less* restriction on Maine's use of IOLTA funds for politically charged causes than there

was in *Janus*, highlighting the unconstitutionality of Rule 6 as currently implemented.

Finally, even if the Court views the IOLTA program as appropriately tailored to an acceptably compelling interest, the program still fails First Amendment scrutiny because it is not viewpoint neutral. Accepting the facts as presented in the Amended Complaint, the IOLTA program diverts funds to causes that are "left-wing in their political orientation as generally understood in the context of twenty-first America." App. A20. Such a preference for the views of one swath of society at the expense of opposing views is "particularly egregious." *Vidal v. Elster*, 602 U.S. 286, 293 (2024).

In sum, the IOLTA program compels Appellants' speech. It does so in furtherance of the State's aims and the recipient organizations' aims, not in support of any compelling interest. And it fails First Amendment scrutiny, regardless of whether strict or exacting scrutiny applies.

## II.    THE DISTRICT COURT ERRED IN DISMISSING APPELLANTS' CLAIMS AGAINST MAINE JUSTICE FOUNDATION FOR LACK OF STANDING.

### *Standard of Review*

The district court dismissed Appellants' claim against MJF for lack of Article III standing. App. A133-A136. This Court reviews that dismissal *de novo*. *Gustavsen v. Alcon Labs., Inc.*, 903 F.3d 1, 6 (1st Cir. 2018). For the reasons that follow, the

district court erred in holding that MJF was a private actor and that Appellants therefore lacked standing to lodge their First Amendment claims against MJF.

### *Article III Standing*

Federal courts have constitutional authority to decide only "cases" and "controversies." U.S. Const. art. III § 2; *see Muskrat v. United States*, 219 U.S. 346, 356 (1911). The requirement of standing is "rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To bring suit, a plaintiff must have "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues" before the court. *Baker v. Carr*, 369 U.S. 186, 204 (1962).

The "irreducible constitutional minimum" of standing is that, for each claim, a plaintiff must allege an actual or imminent injury that is traceable to each defendant and redressable by the court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-62 (1992). The district court granted MJF's motion to dismiss for lack of standing on the grounds that the third element (redressability) of this three-element test was lacking. App. A135-A136.

### A. MJF is a state actor for purposes of administering Rule 6.

In its ruling on standing, the district court treated MJF as though it were no different from any other private entity, explaining that an order enjoining MJF from enforcing Rule 6 "would be the same as" an order that "enjoined RJB from

complying with Rule 6," with the "effect being nothing because those entities do not

enforce Rule 6":

> "[W]hen a statute is challenged as unconstitutional, the proper defendants are the government officials whose role it is to administer and enforce it." *Mangual v. Rotger-Sabat*, 317 F.3d 45, 57 (1st Cir. 2003) (addressing redressability); *see also N.H. Right to Life PAC v. Gardner*, 99 F.3d 8, 13 (1st Cir. 1996) ("[W]hen a plaintiff seeks a declaration that a particular statute is unconstitutional, the proper defendants are the government officials charged with administering and enforcing it."). This axiomatic principle stems from the fact that Plaintiffs can obtain complete redressability from a favorable ruling solely against State Defendants whereas the same is not true for a favorable ruling solely against MJF.
>
> If this Court enjoined only Maine Justice Foundation from enforcing Rule 6 the effect would be the same as if I enjoined RJB from complying with Rule 6, or as if I enjoined banks that disperse IOLTA funds to Maine Justice Foundation from enforcing Rule 6. The effect being nothing because those entities do not enforce Rule 6. The Maine Justice Foundation, just like RJB, is mandated to take certain actions under Rule 6. But Maine Justice Foundation itself does not police whether it has taken the appropriate actions or if it has the authority to stop dispersing IOLTA funds without incurring a penalty. *See* Me. Bar R. 6(e)(1) (requiring the Maine Justice Foundation to report to the Maine Supreme Judicial Court on IOLTA spending).

App. A134-A135.

But decisions of this Court and the Supreme Court make clear that MJF is a

state actor because it is a joint participant with the State of Maine in implementing

the IOLTA program, and thus it is a proper defendant in this constitutional challenge.

*See Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 809 (2019) ("A private

entity can qualify as a state actor in a few limited circumstances," such as "when the

government compels the private entity to take a particular action [or] when the government acts jointly with the private entity."); *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, 295 (2001) ("[A] nominally private entity may be a state actor when it is entwined with governmental policies."); *Santiago v. Puerto Rico*, 655 F.3d 61, 68 (1st Cir. 2011). And a defendant "may be a state actor for some purposes but not for others." *George v. Pacific-CSC Work Furlough*, 91 F.3d 1227, 1230 (9th Cir. 1996).

The "joint participation" (or "joint action") theory of state action best establishes that, for the purpose of administering Maine's IOLTA program, MJF is a state actor. This Court has held that a private entity is treated as a state actor when "the government 'has so far insinuated itself into a position of interdependence with [the private entity] that it must be recognized as a joint participant in the challenged activity.'" *Perkins v. Londonderry Basketball Club*, 196 F.3d 13, 21 (1st Cir. 1999) (quoting *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 725 (1961)). In *Burton*, for instance the Supreme Court held that a private restaurant's racial discrimination was state action where the restaurant was located in a government-owned parking building and paid its rent to the government. 365 U.S. at 723-24.

Here, MJF's administration of the IOLTA program is expressly *dictated* by Maine Bar Rule 6. There can be no doubt that MJF, through a "private" entity, is operating as an arm of the Law Court in choosing the recipients of IOLTA funds,

35

determining criteria for IOLTA-eligible financial institutions, paying its own administration costs out of IOLTA revenue, and distributing IOLTA funds to the organizations that it chooses. The State would have to amend the Bar Rules in order to extract MJF from administering and enforcing the IOLTA program. That is a classic "position of interdependence." *Perkins*, 196 F.3d at 21.

In the district court's view, the outcome would be no different if Appellant Wescott had simply sued his law firm to allege the constitutional harms alleged herein. App. A134-A135. But RJB is not the one choosing to use Wescott's funds to subsidize speech on matters that Appellants oppose: MJF is.

## B. Appellants' harm is redressable by an injunction against MJF.

The district court's ruling on standing concluded that because MJF did not "enforce" penalties for noncompliance with Rule 6, Appellants' injuries were not redressable by a ruling against MJF. App. A135-A136. That is incorrect. Appellants have pleaded that MJF chooses the recipient organizations and distributes the funds. App. A11-A18, A20. Thus, the district court could redress Appellants' injuries by enjoining MJF from distributing IOLTA funds in a manner that causes the funds to subsidize speech on matters of "substantial public concern." *Janus*, 585 U.S. at 914

Finally, even if this Court is inclined to agree with the district court's characterization of MJF as a private actor, the pleading-stage posture of the matter should give it pause: this Court has explained that the "inquiry" into whether a given

private entity qualifies as a state actor "is typically factbound," making it inappropriate for resolution on a motion to dismiss. *Jarvis v. Vill. Gun Shop, Inc.*, 805 F.3d 1, 8 (1st Cir. 2015); *see also Burton*, 365 U.S. at 722 ("Only by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance.").

## **CONCLUSION**

For the foregoing reasons, Appellants respectfully ask this Court to reverse the district court's dismissal of Appellants' Amended Complaint, declare Maine Bar Rule 6 unconstitutional as applied to Appellants on the facts alleged in the Amended Complaint, and remand this matter for further proceedings.

Date: July 17, 2025

Respectfully submitted,

/s/ Kyle Singhal
Kyle Singhal
HOPWOOD & SINGHAL PLLC
1701 Pennsylvania Ave., N.W., #200
Washington, D.C. 20006
Telephone: (202) 769-4080
kyle@hopwoodsinghal.com

Stephen C. Smith
STEVE SMITH TRIAL LAWYERS
191 Water Street
Augusta, ME 04330
Telephone: (207) 622-3711
info@mainetriallaw.com

*Counsel for Appellants*

## **<u>CERTIFICATE OF COMPLIANCE</u>**

I certify that the foregoing brief complies with Fed. R. App. P. 27 and 32 because the countable portion thereof contains 8,530 words and was typed in 14-point Times New Roman font.

Respectfully submitted,


<u>/s/ Kyle Singhal</u>
Kyle Singhal
*Counsel for Appellants*


## **<u>CERTIFICATE OF SERVICE</u>**

I certify that on July 17, 2025, a copy of the foregoing brief was served upon opposing counsel by electronic filing.

Respectfully submitted,


<u>/s/ Kyle Singhal</u>
Kyle Singhal
*Counsel for Appellants*

## ADDENDUM

| District Court Docket Entry No. | Description | Page Range |
|---|---|---|
| 27 | Order on Defendants' Motions to Dismiss (PageID#171-180) | AD-1–AD-10 |
| 28 | Judgment (PageID#181) | AD-11 |

UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| E. DAVID WESCOTT and RUSSELL JOHNSON BEAUPAIN, *a limited liability company*,<br><br>       Plaintiffs<br><br>v.<br><br>HON. VALERIE STANFILL, *in her official capacity as Chief Justice, Maine Supreme Judicial Court,*<br>AMY QUINLAN, ESQUIRE,<br>*in her official capacity as State Court Administrator for the State of Maine Judicial Branch,* MAINE JUSTICE FOUNDATION, and MAINE BOARD OF OVERSEERS OF THE BAR,<br><br>       Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 1:24-cv-00286-LEW |

## <u>ORDER ON DEFENDANTS' MOTIONS TO DISMISS</u>

Maine, like nearly every other state, has an Interest on Lawyers' Trusts Accounts ("IOLTA") program.  IOLTA-generated interest is pooled to give free legal aid to poor Mainers and otherwise support access to the justice system.  Plaintiff David Wescott is a Maine citizen and Plaintiff Russell Johnson Beaupain LLC ("RJB") is a law firm hired to represent him.  They claim Maine's IOLTA program forces them to subsidize certain speech in violation of their First Amendment rights.  Plaintiffs have filed their Complaint naming three State Defendants for their role in promulgating and enforcing IOLTA rules: Chief Justice Valerie Stanfill of the Maine Supreme Judicial Court, State Court

Administrator Amy Quinlan, and the Maine Board of Overseers of the Bar. Plaintiffs also sue private entity Maine Justice Foundation ("MJF"), which is charged with receiving and distributing IOLTA funds.

Before the Court are both Defendants' Motions to Dismiss (ECF Nos. 21, 22). Defendants argue that Plaintiffs have failed to state a plausible claim and lack standing with respect to Defendant Maine Justice Foundation, and that the Board of Overseers is shielded by sovereign immunity. On this last point, Plaintiffs agree. Plaintiffs' claims against the Board are thus dismissed. With respect to the remaining claims, for the following reasons Defendants' motions are granted and Plaintiffs' claims are dismissed.

## BACKGROUND

Maine and forty-four other states have mandatory IOLTA programs. In general, IOLTA programs take funds that cannot otherwise generate income for clients or their attorneys, place them in an interest-bearing account, and use the interest to achieve charitable goals. Maine Bar Rule 6 provides that when an attorney holds client funds that are nominal or short-term "such that they cannot earn interest or dividends for the client in excess of the costs incurred to secure such income," the attorney must place those funds into an IOLTA account. Me. Bar R. 6(e); *see also* R. 1.15. Institutions holding IOLTA funds release the interest to Defendant Maine Justice Foundation. R. 6(c)(4)(A). Maine Justice Foundation, in turn, distributes this interest "to provide services that maintain and enhance resources available for access to justice in Maine, including those services that achieve improvements in the administration of justice and provide legal services,

**ADDENDUM PAGE AD-2**

education, and assistance to low-income, elderly, or needy clients." *Id.* R. 6(e). Maine

Justice Foundation has given IOLTA generated money to:

> Cumberland Legal Aid Clinic, a Maine School of Law student clinic that represents low-income clients in civil cases;

> Immigrant Legal Advocacy project, which is the only state-wide immigration legal services organization and engages in legislative lobbying to that end;

> Legal Services for Maine Elders, which offers free legal aid to Mainers over 60 and engages in legislative lobbying;

> Maine Equal Justice, a nonprofit that provides direct legal services and participates in community organizing and legislative lobbying;

> Pine Tree Legal Assistance, an organization that provides free civil legal assistance, disseminates information on civil legal rights, and provides community legal education; and

> Maine Volunteer Lawyers Project, which recruits volunteer attorneys to give free legal advice and representation.

Plaintiffs find the causes these organizations support "morally, ethically, religiously, and politically abhorrent." Pls.' Am. Compl. ¶ 88. Nearly two years ago, Plaintiff Wescott paid $2,500 to Plaintiff RJB to retain the firm's legal services. RJB placed that money in an IOLTA account and the generated interest was released to the Maine Justice Foundation. In Plaintiffs' view, this is exactly the form of compelled speech that the Founders decried.

Plaintiffs thus launch an as-applied constitutional challenge to the IOLTA program. Plaintiffs seek a declaratory judgment that Rule 6 of the Maine Bar Rules is unconstitutional as currently enforced, a declaratory judgment that IOLTA funds can never be used for certain enumerated purposes, an injunction barring Defendants from enforcing Rule 6 and/or enjoining Defendants from mandating participation in the IOLTA program.

**ADDENDUM PAGE AD-3**

Defendant Maine Justice Foundation responds that Plaintiffs lack standing. State Defendants add that Plaintiffs have failed to allege facts sufficient to plausibly support their First Amendment claim.

## DISCUSSION

### A.    STANDING

In its Motion to Dismiss (ECF No. 22), the Maine Justice Foundation asserts that Plaintiffs lack standing to pursue a claim against it. Standing is a threshold jurisdictional inquiry. Article III courts are constitutionally limited to hearing a "case" or "controversy." U.S. CONST. art. III, § 2. To satisfy this requirement, a plaintiff needs to demonstrate they have suffered an "'injury in fact' . . . 'fairly traceable to the actions of the defendant, and that the injury will likely be redressed by a favorable decision." *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Plaintiffs bear the burden of "demonstrat[ing] standing for each claim they press' *against each defendant*, 'and for the form of relief that they seek.'" *Murthy v. Missouri*, 144 S. Ct. 1972, 1988 (2024) (emphasis added) (quoting *Transunion LLC v. Ramirez*, 594 U.S. 413, 431).

Plaintiffs' prayer for relief requests this Court (1) declare Rule 6 a violation of the First and Fourteenth Amendments as applied to Plaintiffs and enjoin Defendants from enforcing it, (2) declare it unconstitutional for IOLTA funds to be used for certain purposes,[1] or alternatively (3) enjoin Defendants from requiring lawyers to participate in

---

[1] Plaintiffs specifically request I declare it unconstitutional for IOLTA funds to be used "for the five purposes set forth in Paragraph 38 of this Complaint." Pls. Am. Compl. (ECF No. 18) at 17. Paragraph 38 *(continued next page)*

4

**ADDENDUM PAGE AD-4**

the IOLTA program.  Maine Justice Foundation neither promulgated nor enforces Rule 6.

Accordingly, it argues correctly that Plaintiffs' have no standing to sue it.

Plaintiffs assert that traceability is met because Maine Justice Foundation's distribution of funds "is a link in the chain that inflicts Plaintiffs' harm . . . [a] simple, first-year law school 'but for' causation."  Pls. Response to Maine Justice Foundation's Mot. (ECF No. 24) at 2-3.  Plaintiffs also suggest that redressability is met because "a decision of *this Court* would redress Plaintiffs' harm."  *Id.* at 4.  Plaintiffs' theory on standing seems to suggest that they could sue anyone involved in carrying out Maine's IOLTA program because, in the course of rendering a judgment, this Court could enjoin state enforcement of Rule 6.  Based on that rationale, their hypothetical first-year law student would certainly find it appropriate for Plaintiff Wescott to sue Plaintiff RJB.  "But for" RJB placing Wescott's money in an IOLTA account, Wescott's alleged harm would not have occurred.

Luckily for our law student, there is helpful precedent.  "[W]hen a statute is challenged as unconstitutional, the proper defendants are the government officials whose role it is to administer and enforce it."  *Mangual v. Rotger-Sabat*, 317 F.3d 45, 57 (1st Cir. 2003) (addressing redressability); *see also N.H. Right to Life PAC v. Gardner*, 99 F.3d 8,

---

of the Amended Complaint contains no such list.  I assume this is a typographical error as Paragraph 38 of the Original Complaint (ECF No. 1) lists:

    (1)  supporting or opposing candidates for elected office,

    (2)  supporting or opposing ballet initiatives or referenda,

    (3)  lobbying in support of or in opposition to pending proposed legislation,

    (4)  seeking public support through the media including social media to support or oppose legislation, valid initiatives or referenda for candidates for elected office,

    (5)  voter registration, voter education, voter signature gathering, or get out to vote actions.

Compl. ¶ 38.

**ADDENDUM PAGE AD-5**

13 (1st Cir. 1996) ("[W]hen a plaintiff seeks a declaration that a particular statute is unconstitutional, the proper defendants are the government officials charged with administering and enforcing it."). This axiomatic principle stems from the fact that Plaintiffs can obtain complete redressability from a favorable ruling solely against State Defendants whereas the same is not true for a favorable ruling solely against MJF.

If this Court enjoined only Maine Justice Foundation from enforcing Rule 6 the effect would be the same as if I enjoined RJB from complying with Rule 6, or as if I enjoined banks that disperse IOLTA funds to Maine Justice Foundation from enforcing Rule 6. The effect being nothing because those entities do not enforce Rule 6. The Maine Justice Foundation, just like RJB, is mandated to take certain actions under Rule 6. But Maine Justice Foundation itself does not police whether it has taken the appropriate actions or if it has the authority to stop dispersing IOLTA funds without incurring a penalty. *See* Me. Bar R. 6(e)(1) (requiring the Maine Justice Foundation to report to the Maine Supreme Judicial Court on IOLTA spending).

Plaintiffs plead that this Court may still enjoin Maine Justice Foundation from distributing Plaintiffs' IOLTA interest. But absent an order also enjoining State Defendants from enforcing Rule 6 such an injunction would be meaningless. If Rule 6 is constitutional, Maine Justice Foundation would be wrongfully enjoined. If Rule 6 is unconstitutional, then State Defendant's would be enjoined from enforcing it and Plaintiffs would not have to participate in the IOLTA program, regardless of what the Foundation does. Accordingly, Plaintiffs' lack standing in their claim against Maine Justice

**ADDENDUM PAGE AD-6**

Foundation in the sense that the claim against the Foundation wants redressability. Plaintiffs' claim against Defendant Maine Justice Foundation is DISMISSED.

## B.    FAILURE TO STATE A CLAIM

State Defendants Chief Justice Stanfill and Court Administrator Quinlan also contend that the Plaintiffs have failed to state a claim under the Federal Rules. To avoid dismissal Plaintiffs must provide "a short and plain statement of the claim showing [they] are entitled to relief." Fed. R. Civ. P. 8(a)(2). In practice, this means Plaintiffs' Amended Complaint (ECF No. 18) must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In applying this standard, the Court will accept factual allegations as true and consider whether the facts, along with reasonable inferences that may arise from them, describe a plausible, as opposed to merely conceivable, claim. *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011); *Sepúlveda-Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 29 (1st Cir. 2010). But the Court may ignore conclusory statements that merely recite elements of the claim. *Cheng v. Neumann*, 51 F.4th 438, 443 (1st Cir. 2022) ("We do not credit legal labels or conclusory statements, but rather focus on the complaint's non-conclusory, non-speculative factual allegations and ask whether they plausibly narrate a claim for relief.").

The State Defendants argue that Plaintiffs have failed to allege facts plausibly showing the IOLTA program compels speech. First, Defendants point out that the IOLTA program only applies to nominal or short-term client funds held in trust by an attorney, so Plaintiff, RJB could structure its clients' payments to avoid Rule 6 entirely. Second, Defendants urge that even if Plaintiffs are as a practical matter forced into participating in

**ADDENDUM PAGE AD-7**

the IOLTA program, Plaintiffs have not demonstrated a sufficient connection between their allegedly compelled action and the speech at issue.

In *Washington Legal Foundation v. Massachusetts Bar Foundation*, the First Circuit considered a near-identical situation: plaintiffs alleged "the collection and use of interest . . . generated from the IOLTA trust accounts . . . deprive [plaintiffs] of [their] right to freedom of speech and association." 993 F.2d 962, 978 (1st Cir. 1993). The First Circuit determined in a subsidized speech claim, "there must be a connection between dissenters and the organization so that dissenters reasonably understand that they are supporting the message propagated by the recipient organizations." *Id.* at 979.[2] The First Circuit found no such connection:

> The process by which the IOLTA program collects and uses the accrued interest does not affect the plaintiffs' funds held in IOLTA accounts nor does it require any other expenditures or efforts by the plaintiffs. Put simply, the plaintiffs have not been compelled by the IOLTA Rule to contribute their money to the IOLTA program. Rather, the IOLTA program recipient organizations benefit from an anomaly created by the practicalities of accounting, banking practices, and the ethical obligation of lawyers. The interest earned on IOLTA accounts belongs to no one, but has been assigned, by the Massachusetts Supreme Judicial Court, to be used by the IOLTA program.

---

[2] In reaching this principle, the First Circuit considered precedent from several cases involving union fees and bar association dues. These cases followed *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977), which was recently overruled. *See Janus v. Am. Fed'n of State, Cnty, & Mun. Emps.*, 585 U.S. 878, 886 (2018). Plaintiffs plead *Washington Legal Foundation* "was predicated expressly on the holding of [*Abood*] which *Janus* directly overruled." Pls.' Response to State Defs. (ECF No. 23) at 11. But this overruling has no bearing on the First Circuit's nexus requirement. Both *Janus* and *Abood* dealt with mandatory, direct fees that subsidized unions and clearly implicated the First Amendment. *Janus* found that the state interest recognized in *Abood*—maintaining "labor peace" and preventing "free riders"—could not survive scrutiny because there were less restrictive means to achieve those ends. *Janus*, 585 U.S. at 895-901. In other words, *Janus* does not proscribe *Washington Legal Foundation*'s threshold inquiry into whether a particular state program is a form of compelled speech. And in any event, I am cautious to assume the First Circuit shares Plaintiffs' view of *Janus*'s effect on *Washington Legal Foundation*. *See Eulitt v. Me. Dep't of Educ.*, 386 F.3d 344, 349 (1st Cir. 2004) ("Until a court of appeals revokes a binding precedent, a district court within the circuit is hard put to ignore that precedent unless it has unmistakably been cast into disrepute by supervening authority.").

**ADDENDUM PAGE AD-8**

*Id.* at 980 (footnote omitted); *see also id.* n.16 ("We note that the plaintiff-lawyers are required by the IOLTA Rule to set up IOLTA accounts in banks and deposit appropriate client funds therein. Because a comparable effort would be necessary to set up non-interest bearing accounts for the deposit of client funds, we find it inconsequential for First Amendment analysis."). In the context of takings, the Supreme Court has endorsed the conclusion that clients are not entitled to IOLTA generated interest and "any conceivable net loss to [clients is] the consequence of [attorney's] incorrect private decisions rather than any state action." *Brown v. Legal Found. of Wash.*, 538 U.S. 216, 239-40 (2003) ("The District Court was therefore entirely correct when it made the factual finding that in no event can the client-depositors make any net return on the interest accrued in these accounts. Indeed, if the funds were able to make any net return, they would not be subject to the IOLTA program." (internal quotation marks omitted)).

In the end, Plaintiffs have submitted a complaint alleging facts the First Circuit has already found insufficient to state a claim. Plaintiffs contend that at this stage I must accept their factual allegation "that the IOLTA program creates the public perception that [their] participation in the IOLTA program implies [their] endorsement of the views Defendants use IOLTA funds to support." Pls.' Response to State Defs. at 12. Such an endorsement is predicated on Plaintiffs' statement that the IOLTA "interest would otherwise accrue to [Wescott's] benefit." Am. Compl. ¶ 82. That is simply false. Unless RJB is mismanaging Wescott's funds, absent the IOLTA program Wescott would not see a penny of interest as it would not cover the financial institution's cost of handling his funds. While I accept

**ADDENDUM PAGE AD-9**

well-plead facts as true, I am not "bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

Thus, the statements Plaintiffs request I accept as true are exactly the kind of conclusory, element-of-the-offense statements the Court is entitled to ignore. *See Cheng*, 51 F.4th at 443. Discounting these statements, Plaintiffs fail to allege facts sufficient to support a plausible First Amendment claim because they cannot establish being compelled to subsidize any speech.

## CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss (ECF Nos. 21 and 22) are GRANTED and Plaintiffs' claims are DISMISSED.

**SO ORDERED.**

Dated this 2nd day of April, 2025.

/s/ Lance E. Walker
Chief U.S. District Judge

10

**ADDENDUM PAGE AD-10**

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

E. DAVID WESCOTT, et al          )
                                 )
Plaintiffs,                      )
                                 )
v.                               )     CIVIL NO. 1:24-cv-00286-LEW
                                 )
HON. VALERIE STANFILL, et al     )
                                 )
Defendants,                      )

<u>JUDGMENT</u>

In accordance with the Order on Defendants' Motions to Dismiss entered by

Chief U.S. District Judge Lance E. Walker on April 2, 2025;

JUDGMENT of Dismissal is hereby entered as to defendants Hon. Valerie

Stanfill, Amy Quinlan, Esquire, Maine Justice Foundation and Maine Board of Overseers

of the Bar.

CHRISTA K. BERRY
CLERK

By:    /s/ Charity Pelletier
       Deputy Clerk

Dated: April 2, 2025

**ADDENDUM PAGE AD-11**