Appeal No. 25-1324

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

---

E. DAVID WESCOTT, an individual residing in Dedham, County of Hancock,
State of Maine; RUSSELL JOHNSON BEAUPAIN, a Maine Limited Liability
Company,

Plaintiffs-Appellants

v.

HON. VALERIE STANFILL, in their Official Capacity as Chief Justice, Maine
Supreme Judicial Court; AMY QUINLAN, ESQ., in their Official Capacity as
State Court Administrator for the State of Maine, Judicial Branch;
MAINE JUSTICE FOUNDATION,

Defendants - Appellees,

MAINE BOARD OF OVERSEERS OF THE BAR,

Defendant.

---

On Appeal from Order of U.S. District Court for the District of Maine
Docket No. 1:24-CV-00286-LEW

---

**BRIEF OF APPELLEE MAINE JUSTICE FOUNDATION**

---

Gavin G. McCarthy
Julia B. MacDonald
Pierce Atwood LLP
Merrill's Wharf
254 Commercial Street
Portland, Maine 04101
(207) 791-1100

*Attorneys for Appellee*
*Maine Justice Foundation*

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Appellee Maine Justice Foundation states that it is a non-profit corporation, has no parent corporation, does not issue stock, and has no publicly-held affiliates.

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF AUTHORITIES ...................................................................iv

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ...........................1

STATEMENT OF THE CASE.........................................................................1

    I.     Factual Background...........................................................................1

    II.    Procedural Background ....................................................................4

SUMMARY OF THE ARGUMENT ...................................................................7

ARGUMENT ............................................................................................8

    I.     The District Court correctly concluded that Appellants lack
standing to bring their claim against MJF.............................................8

        A.    Standard of Review..................................................................8

        B.    Appellants' argument that MJF is a state actor is
irrelevant to the question of whether Appellants have
standing to sue MJF. ................................................................9

        C.    Appellants lack standing to sue MJF because their
constitutional injury is not fairly traceable to MJF and
cannot be redressed by MJF......................................................12

            1.    A plaintiff must establish standing against each
defendant for each claim and each form of relief
they seek. .......................................................................12

            2.    The District Court found that Appellants could not
establish standing because MJF did not issue or
enforce the rule that Appellants challenge. ....................13

3.    This decision was correct because MJF did not promulgate the rule at issue and has no enforcement authority with respect to it. .........................14

4.    Appellants' one-paragraph challenge to this holding is based entirely on an attempt to re-frame their claim around MJF's "choice" of recipient organizations. ...................................................19

II.    The District Court correctly concluded that the Maine IOLTA program does not compel Appellants' speech in violation of the First Amendment. ..................................................................21

CONCLUSION ....................................................................21

CERTIFICATE OF COMPLIANCE WITH RULE 32 ...........................................23

CERTIFICATE OF SERVICE ..............................................................24

# TABLE OF AUTHORITIES

Page

## CASES

*Bennett v. Spear*,
    520 U.S. 154 (1997).......................................................11

*Berner v. Delahanty*,
    129 F.3d 20 (1st Cir. 1997)............................................8

*Blum v. Holder*,
    744 F.3d 790 (1st Cir. 2014)..........................................8

*Bronson v. Swensen*,
    500 F.3d 1099 (10th Cir. 2007) .................................... 11, 12, 15, 16

*Digital Recognition Network, Inc. v. Hutchinson*,
    803 F.3d 952 (8th Cir. 2015) ....................................... 12, 17, 18

*In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*,
    916 F.3d 98 (1st Cir. 2019)............................................14

*Jarvis v. Vill. Gun Shop, Inc.*,
    805 F.3d 1 (1st Cir. 2015)..............................................8

*Lewis v. Governor of Alabama*,
    944 F.3d 1287 (11th Cir. 2019) .................................... 12, 18

*Lugar v. Edmondson Oil Co., Inc.*,
    457 U.S. 922 (1982).......................................................10

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992).................................................. 12, 13

*Mangual v. Rotger-Sabat*,
    317 F.3d 45 (1st Cir. 2003)............................................9

*Manhattan Cmty. Access Corp. v. Halleck*,
    587 U.S. 802 (2019).......................................................11

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007) ................................................................. 14, 15

*Murthy v. Missouri*,
    603 US 43 (2024) ........................................................................ 13

*NPG, LLC v. City of Portland, Maine*,
    No. 2:20-CV-00208-NT, 2020 WL 4741913 (D. Me. Aug. 14, 2020) ....... 8, 12

*Off. of Pub. Guardian v. Elliot Hosp.*,
    630 F. Supp. 3d 345 (D.N.H. 2022) ............................................. 10

*Okpalobi v. Foster*,
    244 F.3d 405 (5th Cir. 2001) ................................................. 16, 17

*Pagan v. Calderon*,
    448 F.3d 16 (1st Cir. 2006) .......................................................... 8

*Perkins v. Londonderry Basketball Club*,
    196 F.3d 13 (1st Cir. 1999) ...................................................... 10, 11

*Reddy v. Foster*,
    845 F.3d 493 (1st Cir. 2017) ........................................................ 12

*Shell Oil Co. v. Noel*,
    608 F.2d 208 (1st Cir. 1979) .................................................... 12, 17

*Socialist Workers Party v. Leahy*,
    145 F.3d 1240 (11th Cir. 1998) ................................................ 12, 18

*Support Working Animals, Inc. v. Governor of Florida*,
    8 F.4th 1198 (11th Cir. 2021) .................................................. 14, 17

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) .................................................................... 13

*Tynecki v. Tufts Univ. Sch. of Dental Med.*,
    875 F. Supp. 26 (D. Mass. 1994) ................................................. 10

## STATUTES

28 U.S.C. § 2201(a) ...........................................................................14

42 U.S.C. § 1983 ..................................................................... 5, 9, 10

42 U.S.C. § 1988 .................................................................................6

## RULES

Fed. R. Civ. P. 12(b)(1) ...............................................................6, 8

Me. Bar R. 1(a) ...................................................................................2

Me. Bar R. 2(b) ...................................................................................3

Me. Bar R. 6 ............................................................................. *passim*

Me. Bar R. 6(4)(A) .............................................................................4

Me. Bar R. 6(c)(1) ..............................................................................1

Me. Bar R. 6(c)(4)(A) .........................................................................1

Me. Bar R. 6(d) ...................................................................................3

Me. Bar R. 6(e) ...................................................................................2

Me. Bar R. 6(e)(3) ........................................................................4, 20

Me. Bar R. 6(g) ...................................................................................3

Me. R. Prof. Conduct 1.15 ....................................................... *passim*

## CONSTITUTIONAL PROVISIONS

U.S. Const. amend. I ...................................................... 5, 7, 9

U.S. Const. amend. XIV ............................................... 5, 9, 10

U.S. Const. art. III ......................................................... *passim*

Page

U.S. Const. art. III, § 2 ............................................................................12

**OTHER AUTHORITIES**

§ 3531.5 Causation, 13A Fed. Prac. & Proc. Juris. § 3531.5 (3d ed.) .....................18

*Legal Aid Resources in Maine*, State of Maine Judicial Branch,
    https://www.courts.maine.gov/help/legal/legal-aid.html ................................20

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

I.      Whether the District Court correctly concluded that the Maine Interest

on Lawyers' Trusts Accounts ("IOLTA") program does not compel Appellants'

speech in violation of the First Amendment.

II.      Whether the District Court correctly concluded that Appellants lacked

standing to bring their claim against Maine Justice Foundation ("MJF").

## STATEMENT OF THE CASE

### I.      Factual Background

Pursuant to Maine Bar Rule 6 and Maine Rule of Professional Conduct 1.15,

Maine lawyers in private practice are required to deposit client funds held in trust

that are "small in amount or held for a short period of time such that they cannot

earn interest or dividends for the client in excess of the costs incurred to secure

such income" into an IOLTA account. *See* Me. Bar R. 6; Me. R. Prof. Conduct

1.15 (together, the "IOLTA Rule"). An IOLTA account "is a pooled trust account

earning interest or dividends at an eligible [financial] institution in which a lawyer

or law firm holds funds on behalf of clients." Me. Bar R. 6(c)(1). On at least a

quarterly basis, the financial institutions maintaining lawyers' IOLTA accounts

must transmit the interest and dividends generated by those accounts (minus any

reasonable fees) to MJF. Me. Bar R. 6(c)(4)(A).

Maine Bar Rule 6 directs MJF to distribute the IOLTA funds it receives (minus certain administrative costs) to "services that maintain and enhance resources available for access to justice in Maine, including those services that achieve improvements in the administration of justice and provide legal services, education, and assistance to low-income, elderly, or needy clients." Me. Bar R. 6(e). MJF must also prepare an Annual Financial Report for the Maine Supreme Judicial Court (the "SJC") and the public that specifies, among other things, the allocation of IOLTA funds to the various legal aid providers. *Id.*

The Chief Justice of the SJC and the State Court Administrator are responsible for promulgating, implementing, and amending the rules governing the conduct of lawyers, including the IOLTA Rule. App. A10. The SJC's authority includes the authority to impose restrictions on the use of IOLTA funds by the recipient organizations. App. A11. In 2019, the SJC did in fact consider imposing restrictions on the use of IOLTA funds for legislative lobbying, campaigning, and voter advocacy. App. A18. The SJC ultimately declined to impose such a restriction. App. A19.

The Maine Board of Overseers of the Bar (the "Board"), which was established by the SJC, is responsible for overseeing and enforcing compliance with the rules promulgated by the SJC, including the IOLTA Rule. *Id.*; *see also* Me. Bar R. 1(a) (noting the Board is "the statewide agency to administer the

2

regulation of lawyers," which includes "prosecutorial" and "adjudicative" functions); Me. Bar R. 2(b) (describing the duties of the Board's Bar Counsel, including the duty to prosecute disciplinary proceedings); Me. Bar R. 6(d), (g) (granting the Board's Bar Counsel authority to investigate and verify "the accuracy and integrity of all bank accounts maintained" by lawyers and granting participating financial institutions the authority to disclose records of IOLTA accounts to Bar Counsel).

Unlike the Board and the SJC, MJF is a private nonprofit organization that is not tasked with the creation or enforcement of the IOLTA Rule. App. A10. Appellants have not alleged – because there is no basis to do so – that MJF has any authority to promulgate, amend, or enforce the IOLTA Rule. *See generally* App. A7-27 (Complaint). Nor has MJF taken any action to compel Appellants' compliance with the IOLTA rule even in the absence of formal authority. Appellants do not allege MJF has ever communicated with Appellants, communicated about Appellants, or otherwise taken any action to force Appellants into compliance with the Rule. *Id.* In fact, the Amended Complaint does not allege MJF does *anything* with respect to Appellants. *Id.*

To the contrary, Appellants correctly allege that MJF merely receives and distributes funds pursuant to the IOLTA Rule. MJF "is *directed* to receive interest from IOLTA accounts" by the IOLTA Rule, as promulgated and enforced by the

3

SJC and the Board. App. A10; *see also* Me. Bar R. 6(4)(A). The IOLTA Rule

subsequently directs MJF to distribute that interest to organizations maintaining

and enhancing access to justice in Maine, and MJF does so by distributing IOLTA-

funded grants to the specified legal aid organizations. Me. Bar R. 6(e)(3); *see also*

App. A10-18 (describing legal aid organizations in receipt of IOLTA funds);

Appellants' Brief at 6 (stating MJF "is directed expressly by Rule 6" to distribute

IOLTA funds to organizations maintaining and enhancing access to justice). MJF

does not impose any restrictions on the IOLTA funds provided to the legal aid

organizations, nor does MJF require the legal aid organizations to take any specific

actions. *See* App. A58.

In short, MJF is simply an intermediary between the financial institutions

holding IOLTA accounts and the legal aid organizations ultimately receiving

IOLTA funds. *See id.* A113 (referring to MJF as "a conduit rather than enforcer of

the IOLTA program").

## II.    Procedural Background

Appellants are a law firm, Russell Johnson Beaupain ("RJB"), and a client

of the firm, E. David Wescott ("Wescott"), who paid a retainer to the firm that was

held in an IOLTA fund. *Id.* A8, 16. Appellants filed their initial Complaint in the

United States District Court for the District of Maine on August 8, 2024. On

September 12, 2024, Appellants filed their Amended Complaint, alleging, pursuant

to 42 U.S.C. § 1983, that Appellees Hon. Valerie Stanfill (in her official capacity as Chief Justice of the SJC), Amy Quinlan, Esq. (in her official capacity as State Court Administrator for the State of Maine Judicial Branch) (together, the "State Appellees"), and the Board, along with MJF, violated their right under the First Amendment (as made applicable to the states under the Fourteenth Amendment) to be free from compelled speech (Count I). *See id.* A7-27. The Amended Complaint remains the operative complaint for purposes of this appeal.

In essence, Appellants claimed the IOLTA Rule forces them to contribute "to causes that they find morally, ethically, religiously, and politically abhorrent"—causes such as "defeat[ing] racism and bigotry in all its forms;" "[c]ombating [d]isability [b]ased [d]iscrimination;" and hosting a "[f]orum on [h]ate [c]rime." *Id.* A.11-12.

In their prayer for relief, Appellants asked the District Court to:

(l) declare that Rule 6, as currently enforced, violates the First and Fourteenth Amendments by compelling speech of lawyers or clients, and enjoin Defendants from enforcing it insofar as it permits mandatory IOLTA funds to subsidize systemic advocacy or legislative lobbying;

(2) declare that it is unconstitutional for Defendants to permit IOLTA funds to be used for [a. supporting or opposing candidates for elected office, b. supporting or opposing ballet initiatives or referenda, c. lobbying in support of or in opposition to pending proposed legislation, d. seeking public support through the media including social media to support or oppose legislation, valid initiatives or referenda for candidates for elected office, or e. voter registration, voter education, voter signature gathering, or get out to vote actions];

(3) alternatively, enjoin Defendants from requiring lawyers to participate in the IOLTA (that is, allow an opt-out provision) and require Defendants to provide notice to lawyers and clients that interest from IOLTA funds may be used for systemic advocacy (thereby permitting clients to make an informed decision whether to use the services of a lawyer who does *not* opt out); and

(4) award Plaintiffs' reasonable attorneys' fees, litigation expenses, and costs pursuant to 42 U.S.C. § 1988 and any other applicable law.

*Id.* A18, 23-24.[1]

On October 15, 2024, the State Appellees and the Board filed a Motion to Dismiss the Amended Complaint on both substantive and, with respect to the Board, procedural grounds. *Id.* A25-86. MJF filed a separate Motion to Dismiss on the same day. *Id.* A87-94. In its Motion to Dismiss, MJF adopted in full the arguments set forth by the State Appellees and the Board in their Motion to Dismiss, and separately argued, pursuant to Fed. R. Civ. P. 12(b)(1), that Appellants lacked standing to pursue their claim against MJF. *Id.* A90-92. On November 5, 2024, Appellants agreed to drop the Board, but otherwise opposed both Motions. *Id.* A95-115. The State Appellees and MJF filed their replies on November 19, 2024. *Id.* A116-129.

---

[1] As the District Court noted in its Order, Appellants' second request in their Prayer for Relief contains a typographical error, which is corrected in the above list. *See* App. A133-134.

On April 2, 2025, the District Court granted both Motions to Dismiss. *Id.* A130-39 (the "Order"). The Court agreed with MJF that Appellants lacked standing to pursue their claim against MJF because MJF does not enforce the IOLTA Rule. App. A136. The Court further agreed with the State Appellees that Appellants failed to adequately state a claim for violation of the First Amendment. App. A139. The Court issued its final judgment on the same day, and Appellants' subsequently filed the instant appeal. *Id.* A140-41.

## SUMMARY OF THE ARGUMENT

The bulk of Appellants' brief focuses on their argument that MJF is a state actor—an issue that was not argued by either party below and was not the basis of the District Court's decision below. *See* Appellants' Brief at 33-36. Even in the one paragraph of their brief addressing standing, Appellants do not grapple with the District Court's decision—which correctly concluded that Appellants could not establish standing because MJF did not issue or enforce the IOLTA Rule—instead advancing a new theory that is not supported by any allegations in the Complaint and that makes little sense. Appellants' arguments are both wrong and irrelevant. This Court should affirm the District Court's correct decision on standing.

Additionally, for the reasons set forth in the State Appellees' Brief, which MJF adopts in full, this Court should affirm the District Court's conclusion that Appellants failed to allege a valid claim under the First Amendment.

## ARGUMENT

**I.    The District Court correctly concluded that Appellants lack standing to bring their claim against MJF.**

### A.    Standard of Review

This Court "reviews de novo a district court's grant of a motion to dismiss for lack of standing." *Blum v. Holder*, 744 F.3d 790, 795 (1st Cir. 2014). Standing is governed by Fed. R. Civ. P. 12(b)(1), which addresses challenges to "a court's subject-matter jurisdiction." *NPG, LLC v. City of Portland, Maine*, No. 2:20-CV-00208-NT, 2020 WL 4741913, at *3 (D. Me. Aug. 14, 2020); *see also Pagan v. Calderon,* 448 F.3d 16, 26 (1st Cir. 2006) (noting question of plaintiff's Article III standing is part of court's duty to satisfy itself as to its jurisdiction).[2] "Establishing subject matter jurisdiction is the plaintiff's burden." *Id.* at *5. When a motion challenges subject matter jurisdiction based on the allegations in the pleadings, the Court accepts all well-pleaded facts as true. *Id.* The Court does not, however, credit "conclusory assertions or unfounded speculation." *Id.*

---

[2] Plaintiffs argue the Court should not have dismissed MJF at the pleading stage because the question of whether a private entity is a state actor is "factbound." Appellants' Brief at 37 (quoting *Jarvis v. Vill. Gun Shop, Inc.*, 805 F.3d 1, 8 (1st Cir. 2015)). But, as discussed below, the Court did not determine MJF was not a state actor, but instead determined Appellants lacked standing to sue MJF. "Standing is a threshold issue in every federal case and goes directly to a court's power to entertain an action"; thus, the District Court was correct to address standing at the outset of this case. *Berner v. Delahanty*, 129 F.3d 20, 23 (1st Cir. 1997).

**B.    Appellants' argument that MJF is a state actor is irrelevant to the question of whether Appellants have standing to sue MJF.**

Appellants contend the District Court erred by "holding that MJF was a private actor and that Appellants therefore lacked standing to lodge their First Amendment claims against MJF." Appellants' Brief at 33. But the District Court made no such holding. MJF did not argue in its motion to dismiss that it was not a state actor for purposes of Appellants' section 1983 and Fourteenth Amendment claims, and the District Court accordingly did not analyze nor make any conclusions as to that issue.

As discussed more fully below, the District Court determined that Appellants lack standing to sue MJF because MJF is not charged with promulgating or enforcing the IOLTA Rule, and thus is neither the cause of Appellants' purportedly compelled speech nor able to redress the purported compulsion of speech. The District Court's analysis did not hinge on whether MJF is a state actor, but instead on whether MJF is a "government official[] *whose role it is to administer and enforce*" the IOLTA Rule. App. A134 (quoting *Mangual v. Rotger-Sabat*, 317 F.3d 45, 57 (1st Cir. 2003) (emphasis added)).

Appellants misread the Order as holding that Appellants' lack of standing to sue MJF is predicated on MJF's status as a private entity. Based on their misunderstanding of the Order, Appellants go on to argue that MJF "is a state actor . . . and thus it is a proper defendant in this constitutional challenge." Appellants'

9

Brief at 34. Appellants appear to confuse the concept of standing with the concept of "state action" with respect to the Fourteenth Amendment and section 1983.[3] In fact, every case Appellants cite to support their appeal of the District Court's ruling on standing relates to the "state action" concept. *Id.* at 34-36. The "state action" requirement, however, is simply different from the question of standing, which is what the District Court actually addressed below.

Appellants correctly note that, while "[p]rivate parties acting in their individual capacities are not ordinarily acting under color of state law," *see Off. of Pub. Guardian v. Elliot Hosp.*, 630 F. Supp. 3d 345, 352 (D.N.H. 2022), private parties "can qualify as . . . state actor[s] in a few limited circumstances," including when "the government 'has so far insinuated itself into a position of interdependence with [the private entity] that it must be recognized as a joint participant in the challenged activity.'" Appellants' Brief at 34-35 (quoting

---

[3] Because the Fourteenth Amendment "is directed at the States, it can be violated only by conduct that may be fairly characterized as 'state action.'" *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 924 (1982). Similarly, section 1983 only "provides a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place 'under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . .'" *Id.* (quoting 42 U.S.C. § 1983). Because "the state action requirement under . . . [the] Federal Constitution[] and the 'under color of state law' requirement of 42 U.S.C. § 1983 are essentially the same," they "may be collapsed into a single state action analysis." *Tynecki v. Tufts Univ. Sch. of Dental Med.*, 875 F. Supp. 26, 30 (D. Mass. 1994); *see also Perkins v. Londonderry Basketball Club*, 196 F.3d 13, 17 (1st Cir. 1999) (noting the "state action" requirement is "coextensive" with the "under color of state law" requirement).

*Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 809 (2019) and *Perkins v. Londonderry Basketball Club*, 196 F.3d 13, 21 (1st Cir. 1999)). Appellants then go on to argue that MJF satisfies this "joint participant" theory of state action because "MJF's administration of the IOLTA program is expressly *dictated* by Maine Bar Rule 6" such that MJF "is operating as an arm of the Law Court." Appellants' Brief at 35.

All of this is a red herring. The standing inquiry before the District Court was whether Appellants' alleged injuries were traceable to MJF such that those injuries would likely be redressed by a decision against MJF. *See Bennett v. Spear*, 520 U.S. 154, 162 (1997). Regardless of whether MJF was acting as a private entity or a state entity, the District Court correctly concluded MJF was the *wrong* entity to sue, because it is not the entity whose role it is to enforce the IOLTA Rule. App. A134.

Case law bears out this distinction. For example, in *Bronson v. Swensen*, the Tenth Circuit addressed a challenge to a provision of the Utah Constitution prohibiting plural marriage and a corresponding statute making plural marriage a felony. 500 F.3d 1099, 1102 (10th Cir. 2007). The plaintiffs—who subscribed to the religious doctrine of plural marriage—sued the Clerk of Salt Lake County, who denied the plaintiffs' application for marriage on the basis that one of the plaintiffs was already married. *Id.* at 1103. The parties stipulated that, for purposes of section

11

1983, the clerk who denied their marriage application "acted under color of state law in denying the application." *Id.* The problem for the plaintiffs in *Bronson*, however, was that the clerk was the *wrong* state actor, because the clerk had no "responsibility for *enforcing*" the challenged law. *Id.* at 1110; *see also Shell Oil Co. v. Noel,* 608 F.2d 208, 211 (1st Cir. 1979) (affirming dismissal of claim against state official for lack of standing); *Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 957 (8th Cir. 2015) (same); *Lewis v. Governor of Alabama*, 944 F.3d 1287, 1299 (11th Cir. 2019) (same); *Socialist Workers Party v. Leahy*, 145 F.3d 1240, 1248 (11th Cir. 1998) (same).

In short, virtually every word of Appellants' argument on appeal is simply irrelevant.

### C. Appellants lack standing to sue MJF because their constitutional injury is not fairly traceable to MJF and cannot be redressed by MJF.

#### 1. A plaintiff must establish standing against each defendant for each claim and each form of relief they seek.

"The Constitution restricts the jurisdiction of federal courts to 'Cases' and 'Controversies,' U.S. Const. art. III, § 2, and '[t]hat limitation ... is fundamental to the federal judiciary's role within our constitutional separation of powers.'" *NPG, LLC*, 2020 WL 4741913, at *3 (quoting *Reddy v. Foster*, 845 F.3d 493, 499 (1st Cir. 2017)). Article III standing consists of three elements: First, "the plaintiff must have suffered an injury in fact." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61

12

(1992) (citation modified). Second, "there must be a causal connection between the injury and the conduct complained of." *Id.* Third, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* Last June, the Supreme Court reiterated that "standing is not dispensed in gross," and that "'plaintiffs must demonstrate standing for each claim that they press' against each defendant, 'and for each form of relief that they seek.'" *Murthy v. Missouri*, 603 US 43, 61 (2024) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)).

## 2. The District Court found that Appellants could not establish standing because MJF did not issue or enforce the rule that Appellants challenge.

The District Court concluded that Appellants lack standing to pursue their claim against MJF, explaining that the injury of which Appellants complain—compelled speech by threat of enforcement of the IOLTA Rule—is not redressable by a decision against MJF because MJF does not enforce the IOLTA Rule. App. A135 ("If this Court enjoined only [MJF] from enforcing Rule 6 the effect would be the same as if I enjoined RJB from complying with Rule 6, or as if I enjoined banks that disperse IOLTA funds to [MJF] from enforcing Rule 6. The effect being nothing because those entities do not enforce Rule 6."). The Court similarly noted that an injunction enjoining MJF from distributing Plaintiffs' IOLTA interest would be meaningless in the absence of an order also enjoining the State Appellees

13

from enforcing the IOLTA Rule, because "[i]f Rule 6 is constitutional, [MJF] would be wrongfully enjoined. If Rule 6 is unconstitutional, then State [Appellees] would be enjoined from enforcing it and [Appellants] would not have to participate in the IOLTA program, regardless of what [MJF] does." *Id.* The Court correctly concluded that where, as here, a rule is challenged as unconstitutional, the proper defendants are the government officials charged with enforcing that rule. *Id.*

### 3. This decision was correct because MJF did not promulgate the rule at issue and has no enforcement authority with respect to it.

The Amended Complaint is clear that Appellants' "immediate gripe" is with the existence of IOLTA Rule as written. *Support Working Animals, Inc. v. Governor of Florida*, 8 F.4th 1198, 1203 (11th Cir. 2021). In their own words: "Plaintiffs ask this Court to invalidate Maine Bar R. 6, as it is being implemented by the Supreme Judicial Court of the State of Maine, which requires lawyers to segregate client funds into Interest on Lawyers' Trust Accounts . . . and thereby requires lawyers and their clients to support causes that they oppose." *See* App. A8; *see also id.* A23-24 (prayer for relief).[4] Yet Appellants did not—because they

---

[4] To the extent Appellants also seek declaratory relief, *see* App. A23-24 (prayer for relief), their claim against MJF fares no better than their claim for injunctive relief—a federal court may only grant declaratory relief "[i]n a case of actual controversy within [that court's] jurisdiction," and "the phrase 'case of actual controversy' . . . refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III*." In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 916 F.3d 98, 111 (1st Cir. 2019) (quoting 28 U.S.C. § 2201(a) and *MedImmune,*

could not—allege that MJF has any connection to the IOLTA Rule's existence or enforcement. *See generally id.* A7-24. MJF did not promulgate the IOLTA Rule, has no authority to amend the rule, and cannot discipline any attorney who fails to comply with the rule. *Id.* Nor has MJF taken any action under the auspices of having such authority. *Id.* Appellants do not allege MJF has ever contacted them, communicated to others about them, or otherwise sought to compel their compliance with the IOLTA rule. *Id.*

Instead, Appellants allege MJF simply receives and distributes money pursuant to the Rule. *Id.* A10; *see also id.* A113 (describing MJF as a "conduit rather than enforcer of the IOLTA program"). Put simply, MJF has no authority to compel Appellants to subsidize the speech with which they apparently disagree, and Appellants do not contend that it has tried to do so in the absence of any such authority. An injunction enjoining MJF from enforcing the IOLTA rule would be meaningless, because the rule is not MJF's to enforce.

In light of the above, the District Court correctly concluded that the proper defendants to this constitutional challenge to the IOLTA Rule are the government officials who enforce the rule—the State Appellees. *Bronson*, discussed above, is illustrative. There, the Court determined the plaintiffs lacked standing to bring their

---

*Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)). Appellants' claim against MJF is not justiciable under Article III for the reasons discussed above—namely, MJF has no actual or purported authority to enforce the IOLTA rule.

challenge to the laws prohibiting plural marriage against the clerk who denied them a marriage license based on the "well-established" principle "that when a plaintiff brings a pre-enforcement challenge to the constitutionality of a particular statutory provision, the causation element of standing requires the named defendants to possess authority to enforce the complained-of provision." 500 F.3d at 1110. Because the clerk had no power to initiate any criminal prosecution of the plaintiffs, the court determined there was "no nexus between *this defendant's* past or possible future conduct and plaintiffs' fear of criminal prosecution under Utah law," and therefore concluded plaintiffs did not satisfy the causation and redressability requirements for Article III standing. *Id.* at 1110-1112. The court rejected the plaintiffs' argument that an injunction instructing the clerk to issue them a marriage license would redress their injury, explaining that any such relief "would not flow from [the clerk's] enforcement of Utah's criminal prohibition of polygamy" because the clerk had "no authority to enforce that prohibition." *Id.* at 1111.

*Bronson* is not unique. In *Okpalobi v. Foster*, the Fifth Circuit addressed a suit against a state governor and attorney general seeking to enjoin the "operation and effect" of a statute which created a private right of action against medical doctors performing abortions. 244 F.3d 405, 409 (5th Cir. 2001). The court determined the plaintiffs lacked Article III standing to sue the governor and

16

attorney general because, under the statute's own terms, those defendants were not charged with enforcing the statute. *Id.* at 426-27. Where "the injury alleged by the plaintiffs [wa]s not, and c[ould] not possibly be, *caused* by the defendants," and "their injury [could] not be *redressed* by the[] defendants," the court determined the plaintiffs lacked standing to pursue their claims against those defendants. *Id.* at 427. Similarly, in *Support Working Animals*, the Eleventh Circuit analyzed a suit against the attorney general to enjoin enforcement of a state constitutional amendment outlawing gambling on greyhound racing. 8 F.4th 1198, 1200 (11th Cir. 2021). The court determined that because the attorney general was not vested with any authority to enforce the amendment, the plaintiffs could not show they had suffered (or would imminently suffer) any injury fairly traceable to the attorney general, and an injunction enjoining the attorney general from enforcing the amendment would not redress the plaintiffs' alleged injuries. *Id.* at 1202-05.

As the cases above demonstrate, and as the District Court rightly explained, the principle that the government officials tasked with enforcing a law are the proper defendants in a challenge to that law is "axiomatic." App. A134; *see also Shell Oil,* 608 F.2d at 211 (no standing to sue Attorney General and Governor for law creating only a private right of action, because "an officer of a state is an appropriate defendant" to a suit challenging a law's constitutionality only "if he has some connection with the enforcement of the act"); *Digital Recognition*

*Network*, 803 F.3d at 957 (no standing to sue Governor and Attorney General "because the injury of which [plaintiff] complain[ed] [wa]s not 'fairly traceable' to either official."); *Lewis*, 944 F.3d at 1299 (no standing to sue Attorney General where challenged law "doesn't contemplate enforcement by the Attorney General"); *Socialist Workers Party*, 145 F.3d at 1248 (no standing to sue county supervisors of elections because "where the plaintiff seeks a declaration of the unconstitutionality of a state statute and an injunction against its enforcement, a state officer, in order to be an appropriate defendant, must, at a minimum, have some connection with enforcement of the provision at issue"); § 3531.5 Causation, 13A Fed. Prac. & Proc. Juris. § 3531.5 (3d ed.) (collecting cases).

Appellants seek to "invalidate Maine Bar R. 6, as it is being implemented by the Supreme Judicial Court of the State of Maine." App. A8. The IOLTA Rule's existence and enforcement lie solely in the hands of the State Appellees.[5] MJF is a mere subject of the IOLTA Rule—like RJB, the financial institutions, and the legal aid organizations, MJF has no authority to implement, amend, or enforce the rule. Accordingly, MJF is not the cause of Appellants' constitutional injury, nor can it redress Appellants' constitutional injury. That ability lies solely with the State

---

[5] The Board also plays a role in the enforcement of the IOLTA Rule. However, the fact that Appellants agreed to drop the Board from this case following their procedural error in suing the Board instead of its members, *see* App. A95, should have no bearing on the Court's analysis of standing as to MJF.

Appellees. This Court should therefore affirm the District Court's order dismissing Appellants' claim against MJF for lack of standing.

### 4. Appellants' one-paragraph challenge to this holding is based entirely on an attempt to re-frame their claim around MJF's "choice" of recipient organizations.

In their brief on appeal, Appellants do not really challenge any of this. Instead, in a one paragraph argument, they try to reinvent their claim, arguing for the first time that MJF's purported choice of organizations that receive IOLTA funds is central to their claim. Appellants' Brief at 36. Appellants claim MJF's ability to choose the recipient organizations differentiates MJF from the other entities (such as RJB, the financial institutions, and the legal aid organizations) acting pursuant to the IOLTA Rule. *Id.* This argument fails for two reasons.

First, that is simply not the claim in this case. Appellants never alleged in the Amended Complaint that MJF chooses the recipients of IOLTA funds, never alleged that any alternative choice of organization that is not adverse to Appellants' interests exists, and, critically, never sought relief seeking to enjoin MJF from choosing organizations that engage in systemic advocacy. *See generally* App. A7-24.

Appellants presumably did not make these claims because they could not. Appellants contend all of the core non-profit legal aid providers in Maine are "left-wing" in their political orientation and therefore adverse to their interests. *Id.* A20;

*see also Legal Aid Resources in Maine*, State of Maine Judicial Branch,

https://www.courts.maine.gov/help/legal/legal-aid.html (last visited August 13,

2025) (listing Maine's core non-profit legal aid providers). MJF merely distributes

funds to these legal aid providers pursuant to the IOLTA Rule's requirement that

IOLTA funds "provide services that maintain and enhance resources available for

access to justice in Maine, including those services that achieve improvements in

the administration of justice and provide legal services, education, and assistance

to low-income, elderly, or needy clients." Me. Bar R. 6(e)(3). Appellants notably

do not allege the existence of any "right-wing" or politically neutral organization

that fits the IOLTA Rule's requirements and that MJF has declined to provide with

IOLTA funding.

Second, even were that the claim, it would fail as a matter of law because no

order against MJF could redress their injury. What Plaintiffs want is to not have

their money used for what they call "systemic advocacy." App. A23-24. MJF has

no ability to make any choice within the confines of the Rule that would address

that concern. It is empowered only to turn over monies to the entities that meet the

Rule's criteria. There is no suggestion that it is doing otherwise. Appellants have

not alleged, for example, that MJF has any authority to impose restrictions on the

use of IOLTA funds. In fact, Appellants have alleged the opposite—the SJC, not

MJF, is the body which considers whether or not to impose restrictions on the use

20

of IOLTA funds. App. A18-19. MJF does not have the power to impose restrictions not authorized by the Rule, especially where the SJC itself considered those very restrictions and declined to impose them.

At its core, this is not a case about anything that MJF does. It is a case about whether the Rule must be different. Appellants have the correct parties for that challenge in the State Appellees. MJF adds nothing and should not have to spend its own resources participating in a case that is not about it.

## II.    The District Court correctly concluded that the Maine IOLTA program does not compel Appellants' speech in violation of the First Amendment.

MJF adopts in full the arguments set forth by the State Appellees in their brief and incorporates those arguments as if set forth herein.

## CONCLUSION

Appellants challenge a rule promulgated and enforced entirely by the State Appellees. MJF—a small non-profit with no enforcement authority over the subject rule—should not be required the bear the costs and distraction of complex litigation over which it has no control. For these reasons and the reasons discussed above, this Court should affirm the decision of the District Court dismissing Appellants' claim against MJF for lack of standing.

DATED:  August 18, 2025

                                    */s/ Gavin G. McCarthy*

                                    Gavin G. McCarthy
                                    First Circuit Bar No. 100176
                                    Julia B. MacDonald
                                    First Circuit Bar No. 1215565
                                    Pierce Atwood LLP
                                    Merrill's Wharf
                                    254 Commercial Street
                                    Portland, Maine 04101
                                    (207) 791-1100

                                    *Attorneys for Appellee*
                                    *Maine Justice Foundation*

**CERTIFICATE OF COMPLIANCE WITH RULE 32**

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B), as it contains 5,252 words, excluding the parts of the brief exempted by Fed. R. App. 32(f).

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft 365, Word in Times New Roman size 14 font.

Dated:  August 18, 2025

                          */s/ Gavin G. McCarthy*
                          Gavin G. McCarthy
                          First Circuit Bar No. 100176
                          Julia B. MacDonald
                          First Circuit Bar No. 1215565
                          Pierce Atwood LLP
                          Merrill's Wharf
                          254 Commercial Street
                          Portland, Maine 04101
                          (207) 791-1100

                          *Attorneys for Appellee*
                          *Maine Justice Foundation*

## CERTIFICATE OF SERVICE

I, Gavin G. McCarthy, Esq., hereby certify that on August 18, 2025, I electronically filed the within document with the Clerk of the Court using the CM/ECF system which will send a notification of such filings to all counsel of record.

Dated: August 18, 2025

*/s/ Gavin G. McCarthy*
Gavin G. McCarthy
First Circuit Bar No. 100176
Julia B. MacDonald
First Circuit Bar No. 1215565
Pierce Atwood LLP
Merrill's Wharf
254 Commercial Street
Portland, Maine 04101
(207) 791-1100

*Attorneys for Appellee*
*Maine Justice Foundation*