No. 25-1324

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

**E. DAVID WESCOTT, an individual residing in Dedham, County of Hancock, State of Maine; RUSSELL JOHNSON BEAUPAIN, a Maine Limited Liability Company,**

*Plaintiffs-Appellants,*

v.

**HON. VALERIE STANFILL, in their Official Capacity as Chief Justice, Maine Supreme Judicial Court; AMY QUINLAN, ESQ., in their Official Capacity as State Court Administrator for the State of Maine, Judicial Branch; MAINE JUSTICE FOUNDATION,**

*Defendants-Appellees,*

**MAINE BOARD OF OVERSEERS OF THE BAR,**

*Defendant.*

**On Appeal from the United States District Court, District of Maine**

## BRIEF OF *AMICI CURIAE* NATIONAL ASSOCIATION OF IOLTA PROGRAMS, MASSACHUSETTS IOLTA COMMITTEE, RHODE ISLAND BAR FOUNDATION, AND FUNDACIÓN FONDO DE ACCESO A LA JUSTICIA

## SUPPORTING DEFENDANTS-APPELLEES AND AFFIRMANCE

McDERMOTT WILL & SCHULTE

ETHAN H. TOWNSEND
Counsel of Record
1000 N. West Street
Suite 1400
Wilmington, DE 19801
(302) 485-3911
ehtownsend@mwe.com

WILBER H. BOIES
GABRIELLE L. SIROONIAN
444 West Lake Street
Chicago, IL 60606-0029
(312) 372-2000

MAURA R. CREMIN
One Vanderbilt Ave
New York, NY 100117
(212) 547-5400

*Counsel for Amici Curiae*

## CORPORATE DISCLOSURE STATEMENT

Under Fed. R. App. P. 26.1(a), counsel for amici respectfully submits this Corporate Disclosure Statement and certifies that:

1. Amici have no parent corporations.

2. No publicly held corporation owns 10% or more of the stock or ownership interest in amici.

# TABLE OF AUTHORITIES

**Cases**                                                    **Page(s)**

*Brown v. Legal Found. of Washington*,
    538 U.S. 216 (2003) ........................................................ 16, 17, 23

*Free Speech Coal., Inc. v. Paxton*,
    145 S. Ct. 2291 (2025) ................................................................15

*Hawes v. Macy's Inc.*,
    No. 1:17-cv-754, 2023 WL 8811499 (S.D. Ohio Dec. 20,
    2023)........................................................................................14

*Hyland v. Navient Corp.*,
    48 F.4th 110 (2d Cir. 2022) *cert. denied*, 143 S. Ct. 1747
    (2023) .....................................................................................13

*Janus v. Am. Fed'n of State, Cnty., & Mun. Emps.,
    Council 31*,
    585 U.S. 878 (2018) ...............................................................16

*Jones v. Monsanto Co.*,
    38 F.4th 693 (8th Cir. 2022), cert. denied, 143 S. Ct.
    2458 (2023)..............................................................................13

*Knox v. Serv. Emps. Int'l Union, Loc. 1000*,
    567 U.S. 298 (2012) .......................................................... 15, 16

*In re Google Inc. Street View Elec. Commc'ns Litig.*,
    21 F.4th 1102 (9th Cir. 2021), cert. denied, 143 S. Ct.
    107 (2022)................................................................................14

*In re Motor Fuel Temperature Sales Pracs. Litig.*,
    No. 07-MD-1840-KHV, 2015 WL 5010048 (D. Kan. Aug.
    21, 2015), aff'd, 868 F.3d 1122 (10th Cir. 2017), cert.
    denied, 138 S. Ct. 2679 (2018)......................................... 14, 15

*In re Polyurethane Foam Antitrust Litig.*,
    178 F. Supp. 3d 621 (N.D. Ohio 2016), aff'd sub nom. In
    re Polyurethane Foam Antitrust Litig., No. 16-3664
    (6th Cir. 2017)........................................................................14

**Other Authorities**

Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 12:32 (6th ed. 2025) ......................................................... 12, 13

Hillary A. Webber, *Equal Justice Under the Law: Why IOLTA Programs Do Not Violate the First Amendment*, 53 Am. U. L. Rev. 491 (2003) .................................... 5, 6

James D. Anderson, *The Future of IOLTA: Solutions to Fifth Amendment Takings Challenges Against IOLTA Programs*, 1999 U. Ill L. Rev. 717 (1999) ......................................... 5, 6

Maine Bar Rule 6(a) ............................................................................ 6, 7

Maine Bar Rule 6(e)(3) .......................................................................... 18

Maine Rules of Professional Conduct Rule 1.15 .................................... 4

*Report of the Judicial Branch IOLTA Working Group*, Majority Report ............................................................................. 8, 9, 10

Principles of the Law of Aggregate Litig. § 3.07 .................................. 12

## TABLE OF CONTENTS

INTERESTS OF AMICI ...................................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT...........................3

BACKGROUND ..........................................................................4

    I.     A brief history of IOLTA programs .......................................4

    II.    The function of Maine's IOLTA program .............................6

ARGUMENT ..............................................................................7

    I.     The relief sought by appellants would undermine Maine's IOLTA program ...............................................7

         a. Systemic advocacy is part of legal aid providers' core work ...........................................................8

         b. Appellants' proposed relief threatens IOLTA funding for all aspects of legal aid services .....................10

         c. Courts reject First Amendment compelled speech challenges to cy pres awards in class actions.................12

    II.    IOLTA serves a compelling state interest by supporting legal aid programs that provide critical legal services.15

         a. Provision of legal services is a compelling state interest .......................................................15

         b. IOLTA is a nonpartisan program designed to fund services for underserved populations, not to advance ideological agendas.............................................17

         c. Maine IOLTA recipients provide vital legal services that aid low-income and underserved populations........18

CONCLUSION..........................................................................23

### INTERESTS OF AMICI[1]

The IOLTA program amici submit this amicus brief to provide the court with a balanced and realistic overview of the role of the IOLTA program in supporting legal aid providers, as well as the law applicable to IOLTA programs.

The National Association of IOLTA Programs (NAIP) is a non-profit, non-partisan membership organization for funders of civil legal aid throughout all United States jurisdictions and the Canadian provinces and territories. NAIP supports the growth and development of Interest on Lawyers Trust Account (IOLTA) programs to increase access to justice for all. NAIP was established in 1986 to enhance legal services and justice for low-income and underserved individuals through the growth and development of IOLTA programs as effective grant-making organizations.

The Massachusetts IOLTA Committee was created in 1985 by the Massachusetts Supreme Judicial Court. It aims to increase

---

[1] Under Fed. R. App. P. 29(a)(4), counsel for amici certify that amici and their counsel authored this brief in its entirety and that no party or its counsel, nor any other person or entity other than amici or their counsel, made a monetary contribution to this brief's preparation or submission. All parties consented to the filing of this brief.

1

access to justice for all residents of the Commonwealth by funding civil legal services programs for people who cannot afford a lawyer and projects to improve the administration of justice. Funds received by the IOLTA Committee are distributed among three charitable entities: the Boston Bar Foundation, the philanthropic arm of the Boston Bar Association; the Massachusetts Bar Foundation, the philanthropic arm of the Massachusetts Bar Association; and the Massachusetts Legal Assistance Corporation. In the 2023-24 grant cycle, these three charities made grants using funds from the IOLTA Committee totaling $19.7 million to 102 organizations and projects across Massachusetts.

The Rhode Island Bar Foundation is a non-profit organization that operates grant programs that will award $1,400,000 in grants in 2025 to legal aid organizations and access to justice programs in Rhode Island. The Foundation receives interest from Rhode Island attorneys' IOLTA accounts, which it manages and disburses through its grant program. Rhode Island's IOLTA program has been successfully operating since 1985.

Fundación Fondo de Acceso a la Justicia (in English, Access to Justice Fund Foundation) is a non-profit organization, created by

law in 2013, that operates a grant program with the purpose of ensuring the availability and effectiveness of civil legal aid for individuals, families and communities with limited economic resources in Puerto Rico. Every year, the Foundation receives between $50,000 and $100,000 in IOLTA funds.

## INTRODUCTION AND SUMMARY OF ARGUMENT

"Equal justice under law is not merely a caption on the façade of the Supreme Court. It is perhaps the most inspiring ideal of our society. It is one of the ends for which our entire legal system exists . . . [I]t is fundamental that justice should be the same, in substance and availability, without regard to economic status." With these words, Justice Lewis Powell succinctly captured the importance of access to justice in the American legal system. But financial limitations prevent many Americans from accessing legal advice. Striving to bring Justice's Powell's aspiration closer to reality, legal aid organizations around the country aim to provide high-quality legal services to underserved populations.

The money to fund these vital organizations must come from somewhere. And a critical source for funding is the Interest on Lawyers Trust Accounts ("IOLTA") program. IOLTA programs permit

lawyers to deposit funds that are nominal in amount or are to be held for a short period of time in pooled, interest-bearing accounts. Interest accrued from these deposits is distributed by state IOLTA programs to fund legal services for low-income residents.

Appellants say that they are filing a constitutional challenge to vindicate their First and Fourteenth Amendment rights against compelled speech. In reality, appellants' claims and the relief they request would undermine Maine's entire IOLTA system. The result would be a significant loss of funds for legal services organizations that provide vital support to the most underserved. The Supreme Court recognizes a "compelling government interest" in ensuring that the poor have access to justice. That interest is at issue here. This Court should affirm the district court.

## BACKGROUND

### I.    A brief history of IOLTA programs

Attorneys often need to hold client funds, whether they are holding a retainer fee or keeping a settlement award in trust. Under the rules of professional conduct, attorneys may not comingle client funds with their own.  *See* Model Rules of Professional Conduct 1.15 (a) ("A lawyer shall hold property of clients or third persons

that is in a lawyer's possession in connection with a representation separate from the lawyer's own property."). Before the 1980s, attorneys would often hold these funds in a trust account that pooled the funds of multiple clients. *See* James D. Anderson, *The Future of IOLTA: Solutions to Fifth Amendment Takings Challenges Against IOLTA Programs*, 1999 U. Ill L. Rev. 717, 721 (1999). These accounts were generally checking accounts that allowed the lawyer to have access to the funds on demand. *Id*. Under banking regulations at the time, such accounts could not accrue interest and essentially provided an interest-free loan to banks. *Id*.

In 1980, Congress authorized the creation of Negotiable Order of Withdrawal ("NOW") accounts, which allowed federally insured banks to pay interest on deposits, but only if the interest went to charitable organizations. *See* Hillary A. Webber, *Equal Justice Under the Law: Why IOLTA Programs Do Not Violate the First Amendment*, 53 Am. U. L. Rev. 491, 495 (2003). With this change in banking regulation, states established IOLTA programs to create NOW accounts for client funds. *Id*. Under this program, attorneys who handle small or short-term client funds that will not earn the client net income place the funds into pooled, interest-bearing accounts, with

the interest sent to state IOLTA programs to fund legal aid organizations. American Bar Association, *How Does IOLTA Work?*, https://tinyurl.com/29nc8nms (last visited August 2, 2025).

Although all U.S. jurisdictions have established IOLTA programs, regulations of these programs vary. Webber, *Equal Justice Under the Law*, at 496-97. Forty-seven jurisdictions require attorneys who maintain client trust accounts to participate in IOLTA; four allow attorneys to opt out of IOLTA; and one, the Virgin Islands, allows attorneys to opt into IOLTA.[2] In every U.S. jurisdiction, IOLTA programs provide resources to support critical legal aid for the poor.

II.    The function of Maine's IOLTA program

Maine's program is typical of how IOLTA programs function around the nation. *See* Maine Bar Rule 6(a) ("Every lawyer

---

[2] American Bar Association, *Status of IOLTA Programs*, https://www.americanbar.org/groups/interest_lawyers_trust_accounts/resources/status_of_iolta_programs/ (last accessed August 4, 2025). Every jurisdiction that has changed its IOLTA program has moved to a mandatory, rather than an opt-out or voluntary program, suggesting a strong nationwide preference for this IOLTA structure. American Bar Association, *Status of IOLTA Programs*, https://www.americanbar.org/groups/interest_lawyers_trust_accounts/resources/status_of_iolta_programs/ (last accessed August 4, 2025).

admitted to practice in Maine shall deposit all funds held in trust in this jurisdiction in accordance with Rule 1.15 of the Maine Rules of Professional Conduct in accounts clearly identified as IOLTA accounts in eligible institutions."). The Maine Supreme Judicial Court created the program and entrusted the Maine Justice Foundation ("MJF"), a charitable organization dedicated to promoting access to justice for low-income Mainers, to operate it. Maine Justice Foundation, *IOLTA: Interest on Lawyers' Trust Accounts*, https://justicemaine.org/iolta/ (last visited August 2, 2025). Although MJF supports various charitable organizations, six legal aid organizations receive IOLTA funds. *See* Maine Justice Foundation, *Maine Justice Foundation Grantees*, https://justicemaine.org/wp-content/uploads/Maine-Justice-Foundation-Grantees.pdf (last accessed August 2, 2025).

## ARGUMENT

I.  **The relief sought by appellants would undermine Maine's IOLTA program.**

Appellants "seek a declaratory judgment that Rule 6 of the Maine Bar Rules is unconstitutional as currently enforced, a declaratory judgment that IOLTA funds can never be used for certain enumerated purposes, an injunction barring defendants from

enforcing Rule 6 and/or enjoining Defendants from mandating participation in the IOLTA program." Appellants' Br. 3. With respect to the Foundation, they assert that the Foundation uses "IOLTA funds in a manner that causes the funds to subsidize speech on matters of substantial public concern." *Id.* at 36 (citation omitted). Although the broad relief they request includes the elimination of mandatory participation in the IOLTA program, appellants particularly object to interest on client funds being distributed "to organizations that engage in lobbying and advocacy on matters of substantial public concern." *Id.* at 13.

a. Systemic advocacy is part of legal aid providers' core work.

Preventing IOLTA funding recipients from engaging in advocacy would undermine their core work. Appearances before legislative bodies by legal aid providers are contemplated, and regulated by many states, including Maine. *Report of the Judicial Branch IOLTA Working Group*, Majority Report, at 6 (December 2019) (citing Me. R. Prof. Conduct 1.0 (M), Me. R. Prof. Conduct 3.9).

Legislative lobbying is particularly important in the context of legal aid representation, where attorneys often seek to improve clients' access to critical benefits and protections. Imagine, for

instance, an organization that provides survivors of domestic violence with legal support. That organization will commit resources to helping individuals obtain restraining orders or securing access to shelters. The organization may also lobby for laws that make it easier for abuse survivors to obtain restraining orders or make shelters more readily accessible. Doing so aims to improve the situation of all survivors of domestic violence, including their current and future clients. In this way, the legal aid provider can be most efficient in promoting the needs and interests of their underserved clients.

Lobbying efforts of IOLTA-funded organizations also provide useful information to legislators. Legal services organizations funded by IOLTA have years of experience working with underserved communities and understand the legal needs of those communities. The advocacy of these knowledgeable and interested organizations helps to inform legislators as they shape policies. *Report of the Judicial Branch IOLTA Working Group*, Majority Report, 8-9. Preventing IOLTA-funded organizations from engaging in

such advocacy would deprive policymakers of a valuable source of information on the needs of their low-income constituents.

The Maine IOLTA program is intended "to increase access to justice for individuals and families living in poverty."[3] And the Maine Bar sees its IOLTA program as "a critical component of alleviating poverty." *Report of the Judicial Branch IOLTA Working Group*, Majority Report, 7. Systemic advocacy for underserved clients is a central part of the IOLTA program.

### b. Appellants' proposed relief threatens IOLTA funding for all aspects of legal aid services.

While seeking an end to all "systemic advocacy," appellants also object to several specific legal aid services that they don't like, including "Medicaid expansion," and "facilitating 'work permits for asylum seekers.'" Appellants' Br. at 3. But providing legal aid services to individual clients includes doing those and other things appellants don't like. IOLTA funding recipients may, for instance, help legal immigrants file applications for U.S. citizenship or assist low-income residents with accessing Medicaid benefits. And while

---

[3] National Association of IOLTA Programs, *IOLTA Basics*, https://iolta.org/what-is-iolta/iolta-basics/ (last accessed August 2, 2025).

appellants have sued about activities they find objectionable, other law firms and clients might object to other services that IOLTA recipients provide. For instance, an attorney with strong opposition to the military could object to IOLTA recipients providing services to veterans. A committed libertarian client might object to the provision of any legal aid services about government programs. If appellants can obtain an IOLTA exemption for themselves, that ruling would leave IOLTA funding subject to the veto of the smallest minority of attorneys and their clients. This is not a vindication of appellants' rights: it is the demolition of legal aid funding.

Many attorneys and their clients could object to something that some IOLTA recipient does. And since money is fungible, the interest accrued on their IOLTA accounts might be contributing to that cause. The only fully effective ways of ensuring that no IOLTA funds go to something that some lawyer or client might object to are either to end funding of legal aid programs altogether or to restrict legal aid to some narrow subset of widely approved projects (perhaps even that subject to an ideological veto by lawyers or law firm clients). The latter approach would effectively amount to a mass censorship initiative, undermining the ability of legal aid

organizations to provide deeply needed, if not universally popular, legal services.

c. Courts reject First Amendment compelled speech challenges to *cy pres* awards in class actions.

This is far from the first case where litigants have claimed that a mechanism for funding legal aid infringes the First Amendment rights of persons with an asserted interest in the same funds. The same attack has been made—and repeatedly failed—in class action litigation.

Class action litigation settlements approved by federal district judges commonly include provisions for settlement fund distributions to class members, with undistributed residual funds transferred in "*cy pres*" awards to public interest organizations, including IOLTA plans and legal aid providers. Principles of the Law of Aggregate Litig. § 3.07 cmt. a, (b) ("[M]any courts allow a settlement that directs funds to a third party when funds are left over after all individual claims have been satisfied" especially when further class distributions would be "impossible or unfair."); Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 12:32 (6th ed. 2025) ("[C]ourts in every circuit, and appellate courts in most,

have approved the use of *cy pres* for unclaimed class action awards.").

Plaintiff class members occasionally object to settlement terms, and some objectors have argued that *cy pres* awards are unconstitutional because they violate the First Amendment rights of class members who oppose the activities of the *cy pres* award recipients. These "compelled speech" constitutional objections have all been rejected by district courts and courts of appeals (followed by certiorari petitions denied by the Supreme Court). *See Jones v. Monsanto Co.*, 38 F.4th 693, 699 (8th Cir. 2022) (holding "class members have not been compelled to subsidize speech when residual funds are distributed cy pres" because "residual funds do not belong to class members"), *cert. denied*, 143 S. Ct. 2458 (2023)); *Hyland v. Navient Corp.*, 48 F.4th 110, 122 (2d Cir. 2022) (internal citations omitted) (rejecting objectors' argument that *cy pres* awards compel speech; the settlement did not implicate the First Amendment because the role of the court was to "determine[] whether [the settlement] was fair, reasonable, and adequate" and "[n]othing about the settlement required the court to establish the terms of the agreement.") *cert. denied*, 143 S. Ct. 1747 (2023)). And courts have found

that there is no compelled speech in *cy pres* cases where class members can opt out of the class, much as lawyers can choose to structure their remuneration to avoid depositing funds in IOLTA accounts. *See In re Google Inc. Street View Elec. Commc'ns Litig.*, 21 F.4th 1102, 1118 (9th Cir. 2021) (rejecting objectors' argument that a *cy pres* distribution compels subsidization of speech, holding no compelled speech occurs where class members can opt out), *cert. denied*, 143 S. Ct. 107 (2022)); *Hawes v. Macy's Inc.*, No. 1:17-cv-754, 2023 WL 8811499 (S.D. Ohio Dec. 20, 2023) (ignoring amicus' First Amendment challenge to *cy pres* awards in class settlements but rejecting the proposed settlement on unrelated grounds); *In re Polyurethane Foam Antitrust Litig.*, 178 F. Supp. 3d 621, 624–25 (N.D. Ohio 2016) (rejecting argument that a *cy pres* award compelled class members to subsidize political speech, saying the claim was "short on supporting case law"), *aff'd sub nom. In re Polyurethane Foam Antitrust Litig.*, No. 16-3664 (6th Cir. 2017)); *In re Motor Fuel Temperature Sales Pracs. Litig., No. 07-MD-1840-KHV, 2015 WL 5010048 (D. Kan. Aug. 21, 2015), aff'd, 868 F.3d 1122 (10th Cir. 2017), cert. denied*, 138 S. Ct. 2679 (2018)) (finding that *cy pres* awards do not violate the First Amendment because "class members ha[ve] an

opportunity to opt out of the settlement," meaning "they have not been required to contribute money…" and therefore there was no compelled speech).

Taken together, this body of precedent makes clear that district courts and courts of appeals—with the Supreme Court's refusal to intervene—have rejected compelled speech First Amendment challenges to legal aid funding. There is no basis to treat this compelled speech argument any differently.

## II.    IOLTA serves a compelling state interest by supporting legal aid programs that provide critical legal services

### a. Provision of legal services is a compelling state interest.

The parties here disagree about whether strict or exacting scrutiny applies. Under strict scrutiny, the state must show that a law is "the least restrictive means of achieving a compelling state interest." *Free Speech Coal., Inc. v. Paxton*, 145 S. Ct. 2291, 2302 (2025) (citations omitted). Under the "exacting scrutiny" test, a subsidy may only be sustained if it "serve[s] a "compelling state interes[t] . . . that cannot be achieved through means significantly less

restrictive of associational freedoms." *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 310 (2012) (citation omitted).

Under either standard, the law at issue must serve a compelling state interest. Appellants rely on the Supreme Court's decision in *Janus* for the proposition that the state cannot establish mandatory funding programs. *See* Appellants' Br. at 16-19. In *Janus*, the Supreme Court was considering whether an Illinois law compelling public employees to subsidize union political activities by paying union dues was constitutional. *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 585 U.S. 878, 885-86 (2018). In determining that it was not, the Court held that the union respondents had not shown a compelling state interest. *Id.* at 895-97. The Court found that the "risk of 'free riders'" was an insufficient reason to compel subsidization. *Id.* at 897. And while maintaining "labor peace" was a compelling state interest, the Court found no evidence labor peace could be not obtained through less restrictive means. *Id.* at 895-96.

This case concerns a very different interest than those the Court considered in *Janus*. IOLTA seeks to "provid[e] legal services to literally millions of needy Americans." *Brown v. Legal Found. of*

*Washington*, 538 U.S. 216, 232, (2003). And the Supreme Court has already held that this is a "compelling interest" in the Fifth Amendment context. *Id.* Furthermore, as discussed above, the overwhelming reliance of United States jurisdictions on mandatory IOLTA programs demonstrates that those states have found this approach to be the most effective means of running these programs. The relief that appellants seek would jeopardize the function of the Maine IOLTA program. And relying only on alternatives to IOLTA, such as taxpayer-funded aid or funding through bar dues, would only place more burdens on speech, because the IOLTA program is an established and reliable way to provide legal aid funds. Unlike in *Janus*, the IOLTA program is actually the least restrictive means of achieving the state's interest in providing legal services to the poor.

> **b. IOLTA is a nonpartisan program designed to fund services for underserved populations, not to advance ideological agendas.**

While appellants present IOLTA as a hotbed of leftist social activism, this is a gross misrepresentation, as Maine's program shows. Maine Bar Rule 6(e)(3) states that IOLTA funds "are intended to provide services that maintain and enhance resources available for access to justice in Maine, including those services

that achieve improvements in the administration of justice and provide legal services, education, and assistance to low-income, elderly, or needy clients." Though appellants attempt to present Maine's IOLTA program as systemically biased in favor of left-wing causes, in fact Maine's IOLTA recipients provide legal services to many demographics on a nonpartisan basis, the elderly, rural people and veterans. Recipients of IOLTA funds are simply organizations that aid the poor.

### c. Maine IOLTA recipients provide vital legal services that aid low-income and underserved populations.

IOLTA programs fund organizations which provide valuable legal services to at-risk Americans. While each state's IOLTA program operates differently and funds different organizations, Maine's program is representative of how IOLTA functions. Six organizations receive IOLTA funding. A close inspection of those organizations shows how devastating a loss of IOLTA funds would be to low-income Mainers.

Pine Tree Legal Assistance "provide[s] free civil legal assistance in cases where it can make a difference in one's ability to meet one's basic human needs or in enforcing one's basic human rights, including access to housing, food, income, safety, education,

and healthcare."[4] To that end, it provides services ranging from assisting survivors of domestic violence and sexual assault with their civil legal needs,[5] providing tax support to low-income residents,[6] and helping Maine veterans obtain the benefits and support to which they are entitled.[7] Pine Tree Legal Assistance also provides significant assistance in helping Maine tenants avoid eviction. Indeed, from 2019 to 2022, Pine Tree Legal Assistance provided 80% of tenant representation in Maine eviction cases.[8]

The Volunteer Lawyers Project "recruits volunteer lawyers to try to provide free legal information, advice, and representation to Mainers with low incomes with certain civil legal problems."[9] This

---

[4] Pine Tree Legal Assistance, *Our Mission and Services*, https://www.ptla.org/our-mission-and-services (last accessed August 3, 2025).

[5] Pine Tree Legal Assistance, *The Family Law and Victim Rights Unit*, https://www.ptla.org/family-law-and-victim-rights-unit (last accessed August 3, 2025).

[6] Pine Tree Legal Assistance, *Low Income Taxpayer Clinic*, https://www.ptla.org/low-income-taxpayer-clinic# (last accessed August 3, 2025).

[7] Pine Tree Legal Assistance, *Military Services Homepage*, https://www.ptla.org/military-services-homepage (last accessed August 3, 2025).

[8] Pine Tree Legal Assistance, *Maine Evictions 2019-2022* (May 12, 2023), https://www.ptla.org/sites/default/files/Eviction%20Report%20May%202023%20Final.pdf (last accessed August 21, 2025).

[9] Volunteer Lawyers Project, *Organization Overview*, https://www.vlp.org/ (last accessed August 3, 2025).

includes providing support with family law cases, appeals of denials of benefits, workers' rights claims, and small claims cases.[10]

Legal Services for Maine Elders works "to provide free, high quality legal services to people who are 60 and older when their basic human needs are at stake and advocate for people facing challenges accessing Medicare benefits."[11] This includes providing legal assistance to older Maine residents facing abuse and financial exploitation, predatory lending, evictions and discharges from long-term care facilities, and appeals of MaineCare[12] denials.[13] In 2023, Legal Services for Maine Elders handled 4,300 cases, nearly half of which were dedicated to securing health and housing benefits for

---

[10] Volunteer Lawyers Project, *Need Legal Help?*, https://www.vlp.org/for-those-seeking-legal-assistance (last accessed August 3, 2025).

[11] Legal Services for Maine Elders, *Our Mission and Programs*, https://mainelse.org/content/our-mission-and-programs (last accessed August 3, 2025).

[12] MaineCare is the state equivalent of Medicaid.

[13] Legal Services for Maine Elders, *Legal Help*, https://mainelse.org/content/legal-help (last accessed August 3, 2025).

senior Mainers.[14] Such services are critical for Mainers facing exploitation or bureaucratic impediments to accessing vital services.

Cumberland Legal Aid Clinic (since renamed the Clinics at Maine Law) houses various legal aid clinics established at the University of Maine School of Law.[15] In addition to providing general criminal defense, family law and consumer law services,[16] clinic participants provide legal resources to underserved communities in rural Maine,[17] and offer representation for victims of domestic violence, abuse, and stalking.[18] In fact, in 2024, more than 40% of the clinic's 519 active cases were part of its Protection from Abuse

---

[14] Legal Services for Maine Elders, *2023 Report*, https://mainelse.org/sites/default/files/2024-09/2023%20Annual%20Report.pdf (last accessed August 21, 2025).

[15] Maine Law, *Clinics and Centers*, https://mainelaw.maine.edu/academics/clinics-and-centers/ (last accessed August 3, 2025).

[16] Maine Law, *General Practice Clinic*, https://mainelaw.maine.edu/academics/clinics-and-centers/general-practice/ (last accessed August 3, 2025).

[17] Maine Law, *Rural Practice Clinic*, https://mainelaw.maine.edu/academics/clinics-and-centers/rural-practice-clinic/ (last accessed August 3, 2025).

[18] Maine Law, *Protection from Abuse*, https://mainelaw.maine.edu/academics/clinics-and-centers/protection-abuse/ (last accessed August 3, 2025).

Program.[19] The clinic serves the dual purpose of providing law students with invaluable practical experience and offering high-quality legal services to underserved Maine residents.

Maine Equal Justice helps low-income residents access benefits, including scholarship funding, Food Assistance (SNAP), and childcare subsidies.[20]

The Immigrant Legal Advocacy Project "provides a full range of immigration legal services to meet the needs of Maine's diverse immigrant communities."[21] This includes assisting asylum seekers with their claims,[22] assistance with permanent residence and citizenship applications,[23] and support for human trafficking

---

[19] University of Maine School of Law, *2024 Annual Report*, at 5, https://digitalcommons.mainelaw.maine.edu/cgi/viewcontent.cgi?article=1018&context=clac-annual-report (last accessed August 21, 2025).

[20] Maine Equal Justice, *Legal Help from Maine Equal Justice*, https://maineequaljustice.org/site/assets/files/4221/legal_help_flyer.pdf (last accessed August 3, 2025).

[21] Immigrant Legal Advocacy Project, *Direct Legal Services*, https://ilapmaine.org/direct-legal-services (last accessed August 3, 2025).

[22] Immigrant Legal Advocacy Project, *Asylum*, https://ilapmaine.org/asylum-program (last accessed August 3, 2025).

[23] Immigrant Legal Advocacy Project, *Permanent Residency and Citizenship*, https://ilapmaine.org/permanent-residency-and-citizenship (last accessed August 3, 2025).

victims.[24] In the process, they assist low-income Maine immigrants seeking to improve their legal status and establish themselves as contributing members of Maine society.

These organizations provide unique services for underserved Maine residents, improving access to the legal system for the populations they serve, which is a "compelling interest," *Brown,* 538 U.S. at 232. Resources for these organizations are limited. If IOLTA is weakened as appellants propose in the lawsuit, these organizations will lose access to a critical source of funding. Depriving legal aid organizations of this funding will cut vital lifelines for low-income people needing legal services.

## CONCLUSION

This Court should affirm.

---

[24] Immigrant Legal Advocacy Project, *Relief for Survivors of Domestic Violence, Human Trafficking, and Other Crimes*, https://ilap-maine.org/relief-for-survivors (last accessed August 3, 2025).

Dated: August 25, 2025                    Respectfully submitted,

By: */s/ Ethan H. Townsend*


MᴄDᴇʀᴍᴏᴛᴛ Wɪʟʟ & Sᴄʜᴜʟᴛᴇ

ETHAN H. TOWNSEND
Counsel of Record
1000 N. West Street
Suite 1400
Wilmington, DE 19801
(302) 485-3911
ehtownsend@mwe.com

WILBER H. BOIES
GABRIELLE L. SIROONIAN
444 West Lake Street
Chicago, IL 60606-0029
(312) 372-2000

MAURA R. CREMIN
One Vanderbilt Ave
New York, NY 100117
(212) 547-5400

*Counsel for Amici Curiae*

## CERTIFICATE OF COMPLIANCE

The counsel below certifies compliance of the foregoing amicus brief with the following requirements of the Federal Rules of Appellate Procedure and the Local Rules of this Court.

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), because this brief contains 4,146 words, including footnotes, but excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook of 14 points.

Dated: August 25, 2025            Respectfully submitted,

By: */s/ Ethan H. Townsend*

## CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2025, I electronically filed the foregoing document with the Clerk of the United States Court of Appeals for the First Circuit by using the CM/ECF system. Counsel in the case are registered CM/ECF users and such service will be accomplished by the CM/ECF system.

By: */s/ Ethan H. Townsend*