# United States Court of Appeals
## For the First Circuit

No. 25-1324

E. DAVID WESCOTT, an individual residing in Dedham, County of
Hancock, State of Maine; RUSSELL JOHNSON BEAUPAIN, a Maine
Limited Liability Company,

Plaintiffs, Appellants,

v.

HON. VALERIE STANFILL, in their official capacity as Chief
Justice, Maine Supreme Judicial Court; AMY QUINLAN, ESQ., in
their official capacity as State Court Administrator for the
State of Maine, Judicial Branch; MAINE JUSTICE FOUNDATION,

Defendants, Appellees,

MAINE BOARD OF OVERSEERS OF THE BAR,

Defendant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Lance E. Walker, U.S. District Judge]

Before

Barron, Chief Judge,
Howard and Rikelman, Circuit Judges.

Kyle Singhal, with whom Stephen C. Smith, Hopwood & Singhal
PLLC, and Steve Smith Trial Lawyers were on brief, for appellants.
Jason Anton, Assistant Attorney General, with whom Aaron M.
Frey, Attorney General, Thomas A. Knowlton, Deputy Attorney
General, and Heather A. Francis, Assistant Attorney General, were
on brief, for appellees Valerie Stanfill and Amy Quinlan.

Julia B. MacDonald, with whom Gavin G. McCarthy and Pierce Atwood LLP were on brief, for appellee Maine Justice Foundation.

McDermott Will & Schulte, Ethan H. Townsend, Wilber H. Boies, Gabrielle L. Siroonian, and Maura R. Cremin on brief for National Association of IOLTA Programs, Massachusetts IOLTA Committee, Rhode Island Bar Foundation, and Fundación Fondo de Acceso a la Justicia, as amici curiae supporting appellees.

———————————

April 2, 2026

———————————

BARRON, **Chief Judge**.    In this appeal, we confront an as-applied challenge to Maine's Interest on Lawyers' Trust Accounts ("IOLTA") program.  The plaintiffs -- a law firm and one of its clients -- contend that the program unconstitutionally compels their speech by requiring the firm to place the client's funds in a special pooled account, see Me. Bar R. 6(a), (c)(1), and then directing a nonprofit organization to distribute the resulting interest to other organizations to "maintain and enhance . . . access to justice in Maine," id. 6(e)(3).    The defendants are the Chief Justice of the Maine Supreme Judicial Court, the State Court Administrator for Maine's Judicial Branch, and Maine Justice Foundation, the nonprofit corporation charged under the program with disbursing the interest.[1]  The United States District Court for the District of Maine dismissed the claims against the Chief Justice and State Court Administrator on the merits and dismissed the claim against Maine Justice Foundation for lack of jurisdiction.  The plaintiffs challenge those rulings on appeal.  We affirm.

---

[1] The operative complaint also named the Maine Board of Overseers of the Bar (the "Board") as a defendant, but the plaintiffs later agreed that the Board was shielded from suit by sovereign immunity.  The portion of the District Court's order dismissing the claim against the Board on sovereign immunity grounds is not at issue in this appeal.

- 3 -

## I.

## A.

The Maine Supreme Judicial Court created Maine's IOLTA program in the mid-1980s. IOLTA: Interest on Lawyers' Trust Accounts, State of Me. Bd. of Overseers of the Bar (Mar. 26, 2026), https://www.mebaroverseers.org/attorney_services/registration/iolta.html [https://perma.cc/SX3N-FZ6A]. In Maine, as elsewhere, "attorneys are frequently required to hold clients' funds for various lengths of time" and are generally subject to restrictions regarding how such funds may be stored. Brown v. Legal Found. of Wash., 538 U.S. 216, 220 (2003). And, even before Maine created its IOLTA program, attorneys complying with these requirements often pooled the funds that they held in trust for their clients in non-interest-bearing checking accounts. See id. at 221. But after Congress enacted a 1980 statute that permitted interest to be paid on a "limited category of demand deposits" known as "NOW accounts," states began adopting programs -- known as IOLTA programs -- that authorized attorneys to deposit client funds in NOW accounts and required that the interest generated by the funds in those accounts "be used for charitable purposes," including "legal services for the poor." Id. at 221-23.

Over time, every state in the United States (including Maine), as well as the District of Columbia, the Commonwealth of Puerto Rico, and the Virgin Islands, has adopted an IOLTA program.

Comm'n on IOLTA, Status of IOLTA Programs, A.B.A. (Mar. 26, 2026), https://www.americanbar.org/groups/interest_lawyers_trust_accounts/resources/status_of_iolta_programs [https://perma.cc/7ULP-ZHU6]. The Maine IOLTA program is governed by Maine Bar Rule 6 ("Rule 6"). That rule requires "[e]very lawyer admitted to practice in Maine" to "deposit all funds held in trust in this jurisdiction in accordance with Rule 1.15 of the Maine Rules of Professional Conduct in accounts clearly identified as IOLTA accounts." Me. Bar R. 6(a). It goes on to define "IOLTA account" as follows:

> An IOLTA account is a pooled trust account earning interest or dividends . . . in which a lawyer or law firm holds funds on behalf of clients, which funds are small in amount or held for a short period of time such that they cannot earn interest or dividends for the client in excess of the costs incurred to secure such income . . . .

Id. 6(c)(1).

Rule 6 also requires banking institutions that service IOLTA accounts to "remit the interest and dividends on [IOLTA] account[s], net of any allowable reasonable fees," "to the Maine Justice Foundation." Id. 6(c)(4)(A). It then directs Maine Justice Foundation to "receive[] and distribute[]" IOLTA funds for the purpose of "provid[ing] services that maintain and enhance resources available for access to justice in Maine, including those services that achieve improvements in the administration of

- 5 -

justice and provide legal services, education, and assistance to low-income, elderly, or needy clients."[2]  Id. 6(e)(3).

The Maine Rule of Professional Conduct referenced in Rule 6 is Rule 1.15 ("MRPC 1.15").  It provides that "[a] lawyer shall deposit into a client trust account any advance payment of fees or retainer and any expenses that have been paid in advance." Me. R. Pro. Conduct 1.15(b)(1).  It goes on to state, with respect to "[a]ll funds of any client held by the lawyer or law firm that are small in amount or held for a short period of time so that they cannot earn interest or dividends for the client in excess of the costs incurred to secure such income," that such funds "shall be deposited in an [IOLTA] account" pursuant to Rule 6. Id. 1.15(b)(4).  MPRC 1.15 provides, however, that "when a lawyer or law firm reasonably expects that client funds will earn interest or dividends for the client in excess of the costs incurred to secure such income," "such funds shall be deposited in a client trust account," with net earnings to be paid to the client. Id. 1.15(b)(3).

---

[2] The rule allots a portion of IOLTA funds to Maine Justice Foundation's administrative costs.  Me. Bar R. 6(e)(2).

**B.**

The lawsuit that gives rise to this appeal was filed in the District of Maine in August 2024.[3]  The plaintiffs are Russell Johnson Beaupain ("RJB"), a law firm with its principal place of business in Maine, and E. David Wescott ("Wescott"), one of RJB's clients.  The operative complaint named as defendants Valerie Stanfill, in her official capacity as Chief Justice of the Maine Supreme Judicial Court; Amy Quinlan, in her official capacity as State Court Administrator for the State of Maine's Judicial Branch; and Maine Justice Foundation ("MJF").  We refer to the first two defendants collectively as the "State Defendants."

The operative complaint alleges that the defendants, in violation of 42 U.S.C. § 1983, "deprived . . . RJB of its First and Fourteenth Amendment rights to be free from compelled speech by requiring [RJB] to maintain an IOLTA account and store client funds therein," with "the interest on such funds being used to support causes that contravene the sincerely held beliefs of the members of . . . RJB."  It further alleges that the defendants, in violation of 42 U.S.C. § 1983, "deprived . . . Wescott of his First and Fourteenth Amendment rights to be free from compelled speech by compelling the contribution of interest from his retainer

---

[3] "[W]e take the facts from the [plaintiffs'] amended complaint."  San Juan Cable LLC v. P.R. Tel. Co., 612 F.3d 25, 28 (1st Cir. 2010).

funds -- interest that would otherwise accrue to his benefit -- to support causes that contravene the sincerely held beliefs of . . . Wescott." As relief, it seeks: (1) a declaration that Rule 6, "as currently enforced," violates the First and Fourteenth Amendments "insofar as it permits mandatory IOLTA funds to subsidize systemic advocacy or legislative lobbying"; (2) a declaration that it is unconstitutional for the defendants "to permit IOLTA funds to be used for" five enumerated purposes;[4] (3) alternatively, an injunction barring the defendants "from requiring lawyers to participate in . . . IOLTA" and "requir[ing] [the] [d]efendants to provide notice to lawyers and clients" regarding the potential uses of IOLTA funds; and (4) costs and attorneys' fees.

The operative complaint alleges, in relevant part, the following.

In June 2023, Wescott transmitted a $2,500 retainer to RJB as an advance payment for legal services. "[I]nterest [later] accrued on the retainer that, but for the mandatory IOLTA program, would have accrued to . . . Wescott's benefit." But, "[i]n

---

[4] Those purposes were listed as follows: "(1) supporting or opposing candidates for elected office, (2) supporting or opposing ball[o]t initiatives or referenda, (3) lobbying in support of or in opposition to pending proposed legislation, (4) seeking public support through the media including social media to support or oppose legislation, valid initiatives or referenda for candidates for elected office, or (5) voter registration, voter education, voter signature gathering, or get out to vote actions."

compliance with the mandatory IOLTA program, the interest . . . was not transferred to . . . Wescott but was instead transferred to [MJF] to support causes adverse to . . . Wescott's interest."

MJF distributed most of the IOLTA interest it received to six legal services groups: Cumberland Legal Aid Clinic, Immigrant Legal Advocacy Project, Legal Services for Maine Elders, Maine Equal Justice, Pine Tree Legal Assistance, and Maine Volunteer Lawyers Project.

Shortly after the plaintiffs filed their amended complaint, the State Defendants filed a motion to dismiss the complaint for failure to state a claim.  They argued, first, that the plaintiffs' participation in the Maine IOLTA program was not compelled because, in representing Wescott, RJB could have used a payment structure other than a retainer fee, and because, under Rule 6 and MRPC 1.15, the "interest generated by an IOLTA account . . . is not money that . . . Wescott would otherwise have pocketed."  Second, the State Defendants argued that even if the plaintiffs' participation in Maine's IOLTA program was compelled, the "connection" between the plaintiffs and the speech to which they objected was too attenuated to support a subsidy-based compelled-speech claim.  Finally, the State Defendants argued that, even if Maine's IOLTA program compelled the plaintiffs' speech, the program still complies with the First Amendment because

- 9 -

"support[ing] access to justice" is "a compelling state interest that cannot be achieved through significantly less restrictive means." (Citing Gaspee Project v. Mederos, 13 F.4th 79, 82-83, 95-96 (1st Cir. 2021).)

MJF filed a separate motion to dismiss the complaint, in which MJF adopted the State Defendants' arguments in full, that same day. MJF additionally argued that the plaintiffs lacked standing to sue it because it did not cause their injuries and because the relief that they sought could not be provided in an action against MJF because MJF neither promulgated nor enforced Rule 6.

The District Court granted both motions. It noted that, in Washington Legal Foundation v. Massachusetts Bar Foundation, our Circuit had "considered a near-identical" challenge to Massachusetts's IOLTA program. See 993 F.2d 962, 968 (1st Cir. 1993). The District Court explained that we held in that case that, for a plaintiff to state a First Amendment claim for subsidized speech, "there must be a connection between dissenters and the organization so that dissenters reasonably understand that they are supporting the message propagated by [the] recipient organizations." Id. at 979. The District Court noted that we ruled there that the connection was lacking at least in part because "[t]he interest earned on IOLTA accounts belongs to no

one" but instead was a "benefit . . . created by the practicalities of" the IOLTA program. Id. at 980.

The District Court then considered whether, under that precedent, the plaintiffs here had alleged that they had the requisite connection to the speech of the IOLTA-fund-recipient organizations to which they objected. It ruled that they had not.

The District Court further held that the plaintiffs "lack[ed] standing in their claim against" MJF because that claim "wants redressability." It explained that MJF "do[es] not enforce Rule 6" and that the "[p]laintiffs can obtain complete redressability from a favorable ruling solely against [the] State Defendants."

The plaintiffs timely appealed.

## II.

In reviewing the dismissal of a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief may be granted, we "accept[] all well-pleaded facts as true, and we draw all reasonable inferences in favor of the [plaintiffs]." Id. at 971. "Because only well-pleaded facts are taken as true," however, we need not "accept a complainant's unsupported conclusions or interpretations of law," id., nor must we "credit bald assertions" or "subjective characterizations," United States v. AVX Corp., 962 F.2d 108, 115 (1st Cir. 1992) (first quoting Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49,

52 (1st Cir. 1990); then citing Dartmouth Rev. v. Dartmouth Coll., 889 F.2d 13, 16 (1st Cir. 1989)).  Our review is de novo, "and we may affirm on any ground apparent in the record." Rodríguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007).

**III.**

In dismissing the plaintiffs' complaint against the State Defendants for failure to state a claim based on our decision in Massachusetts Bar Foundation, the District Court acknowledged that the plaintiffs' complaint alleged that the IOLTA program "creat[es] the public perception that their participation in the IOLTA program implies their endorsement of the views that [the] [d]efendants use IOLTA funds to support."  The District Court concluded, however, that this statement asserted a legal conclusion and so did not constitute a factual allegation.  As such, the court stated that it needed to accept that conclusion as true only if the complaint's factual allegations supported it.

The District Court explained that the plaintiffs' contention that the public would perceive them to have "endorse[d]" the speech in question was "predicated" on their complaint's allegation "that the IOLTA 'interest would otherwise accrue to [Wescott's] benefit.'"  (Second alteration in original.)  But, the District Court concluded, it could not accept that factual allegation as plausible because it is "simply false," given that, under Maine's IOLTA program, "[u]nless RJB is mismanaging

Wescott's funds, absent the IOLTA program Wescott would not see a penny of interest as it would not cover the financial institution's cost of handling his funds."

In challenging the District Court's ruling dismissing their claims against the State Defendants, the plaintiffs do not dispute the District Court's premise that their as-applied First Amendment claims can go forward only if their complaint plausibly alleged both that the IOLTA program required them to deposit the Wescott funds into an IOLTA account and that those funds otherwise would have accrued interest.  Nor do they dispute that Rule 6 provides that an attorney must deposit client funds into an IOLTA account only when such funds are "small in amount or held for a short period of time such that they cannot earn interest or dividends for the client in excess of the costs incurred to secure such income."  Me. Bar R. 6(c)(1) (emphasis added); accord Me. R. Pro. Conduct 1.15(b)(4).  Nor, finally, do they dispute that MRPC 1.15, which Rule 6 references, requires that client funds be deposited in a non-IOLTA account if a lawyer "reasonably expects" that such funds "will earn interest or dividends for the client." Me. R. Pro. Conduct 1.15(b)(3).  The plaintiffs nonetheless contend that the District Court erred for either of two reasons, neither of which we find convincing.

- 13 -

**A.**

The plaintiffs first take aim at the District Court's ruling on the ground that, by assuming that Wescott's retainer fee would have accrued interest only if RJB was "mismanaging" Wescott's funds, the District Court impermissibly drew a negative inference against them. After all, the plaintiffs highlight, on a motion to dismiss, "all reasonable inferences" must be drawn in favor of the plaintiffs' factual allegations. See Dartmouth Rev., 889 F.2d. at 16. As a result, in their view, "[t]he proper inference to draw in RJB's favor" would be that, "if RJB is in doubt about whether a retainer is sufficiently large . . . to permit its deposit into a separate, non-IOLTA interest-bearing account, then RJB feels compelled to err on the side of using an IOLTA account so as to avoid the threat of enforcement and punishment for noncompliance."

If the plaintiffs mean to argue, however, that their complaint's allegations support a reasonable inference that, when they deposited the Wescott funds into an IOLTA account, they reasonably expected that those funds would not generate net interest, we cannot agree. The complaint is devoid of any facts that so much as hint that RJB was ever unsure about whether Wescott's retainer would generate net interest, let alone that RJB expected that those funds would not do so when they were deposited in an IOLTA account. Indeed, even in their briefs on appeal, the plaintiffs do not assert that RJB in fact was uncertain or had any

- 14 -

such expectation. They instead simply argue in the abstract that a lawyer may "not know whether" funds will accrue net interest and that, with respect to RJB, it "would prefer to be able to store client funds in non-IOLTA accounts regardless of the amount of interest that each retainer might generate during the time it is held."

The plaintiffs do argue, elsewhere in their briefing to us, that MRPC 1.15 "is insufficient to provide an opt-out" from Maine's IOLTA program. That is so, they contend, because that rule "imposes an external 'reasonableness' constraint," which -- coupled with the fact that it is the State Defendants who "enforce the rules" and the "threat of imminent punishment" that RJB would face if the defendants "determin[ed] that RJB had flouted Rule 6" -- "compel[s the plaintiffs] into IOLTA participation."

If by this the plaintiffs mean to argue that the complaint's allegation about the penalties required the District Court to draw the inference that they claim it had to draw, we cannot see why. The allegation in the complaint concerning penalties appears only in the section of the complaint that details how, insofar as Rule 6 did oblige the plaintiffs to store Wescott's funds in an IOLTA account, they were injured by Maine's IOLTA program because of the penalties that they would face for failing to comply with that obligation. The complaint does not at any point purport to draw a connection between that allegation and the

complaint's later allegations regarding RJB's storage of Wescott's funds and the interest that accrued on those funds. Thus, the complaint's allegation regarding the "imminent threat of severe penalties . . . for failing to store client retainer funds in an IOLTA account" fails to support a reasonable inference that the plaintiffs reasonably believed that Wescott's funds would not accrue net interest and, thus, that Rule 6 required that those funds be deposited in an IOLTA account.

We suppose the plaintiffs could be making a distinct argument regarding the import of the complaint's allegation about the threat of penalties. Perhaps they mean to contend that that allegation gives rise to the reasonable inference that the plaintiffs believed that they would be penalized for violating Rule 6 even if they had not violated it. And thus, we further suppose, they may mean to be arguing that that allegation gives rise to the reasonable inference that they had to deposit the Wescott funds in an IOLTA account, even though they reasonably expected that those funds would accrue net interest, due to their reasonable fear of enforcement. But, if the plaintiffs do mean to be making this contention, we are not persuaded by it.

The complaint does not set forth any facts that plausibly support an allegation that Rule 6 has been enforced in a manner that would make any such belief reasonable. And the plaintiffs develop no argument on appeal about why this penalty-based theory

of compulsion is viable, beyond what appears to be their conclusory assertion that we must accept it.  Nor do we see how an unreasonable fear of enforcement, if held, could suffice to shore up their complaint under Massachusetts Bar Foundation.

That the plaintiffs allege in their complaint that they "sincerely believe[d]" that they were required under Rule 6 to deposit these funds in an IOLTA account also does not help their cause.  The sincerity of their belief that Rule 6 compelled the conduct in question is, as a legal matter, irrelevant to the question of whether they reasonably believed that they had to deposit the Wescott funds in an IOLTA account notwithstanding their reasonable expectation that those funds would earn net interest. Even an unreasonable belief can be sincerely held.

To be sure, we must accept as true that RJB deposited Wescott's funds into an IOLTA account and that those funds would earn net interest.  But the plaintiffs do not deny that, as the District Court ruled based on our decision in Massachusetts Bar Foundation, they need to do more.  More specifically, they do not deny that they needed to plausibly allege not only that they deposited the Wescott funds in an IOLTA account and that those funds would earn net interest,[5] but also that Maine's IOLTA program

---

[5] The plaintiffs hinted at oral argument that depositing any funds into an IOLTA account would give rise to a compelled-speech claim even if those funds did not or would not earn net interest

- 17 -

required them to deposit those funds into such an account.  But, as we have explained, we see no basis for rejecting the District Court's determination that they failed to plausibly allege as much. See Kaempe v. Myers, 367 F.3d 958, 963 (D.C. Cir. 2004) (explaining that the court will not accept "inferences drawn by plaintiffs [that] are unsupported by the facts set out in the complaint" (quoting Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002))).

**B.**

The plaintiffs also take issue with the District Court's dismissal of their claims against the State Defendants for a distinct reason.  Here, they assert that the dismissal was in error because the District Court mistakenly treated one of their key allegations as if it were an unsupported legal conclusion.  But this contention rests on a misreading of the District Court's opinion.

The plaintiffs assert that the District Court erred by treating the following allegation as a "legal conclusion couched as a factual allegation": "that the interest on Wescott's retainer

---

on their own.  But any such argument was too little too late; the plaintiffs did not clearly trace their First Amendment injury to their ownership of IOLTA principal.  See Phillips v. Wash. Legal Found., 524 U.S. 156, 172 (1998).  Their opening brief on appeal, meanwhile, assigns some importance to a loss of hypothetical interest.  We therefore have no occasion to address whether a compelled-speech claim could survive in the absence of a showing that the IOLTA deposits would have earned net interest on their own.

'would otherwise accrue to Wescott's benefit' in the absence of the IOLTA program."  But, as our review of the District Court's ruling at the outset of our analysis reveals, the District Court did no such thing.  Rather, the District Court treated as "a legal conclusion couched as a factual allegation" the plaintiffs' assertion in their complaint that the IOLTA program "creat[es] the public perception that their participation in the IOLTA program implies their endorsement of the views that [the] [d]efendants use IOLTA funds to support."

The plaintiffs do not contend, however, that that statement regarding the "public perception" of their endorsement alleges a fact rather than asserting a legal conclusion, and we do not see how they could.  See Mass. Bar Found., 993 F.2d at 977-78 (treating the issue of whether Massachusetts's IOLTA program was compulsory as a question of law).  Thus, we see no merit to this ground for challenging the District Court's ruling dismissing their claims against the State Defendants.

In sum, for these reasons, we conclude that the District Court did not err in dismissing the plaintiffs' First Amendment-based claims against the State Defendants for failing to state a claim upon which relief may be granted.  We thus need not reach any of the plaintiffs' other arguments as to why we must overturn that ruling.

**IV.**

There remains the plaintiffs' jurisdictional challenge to the dismissal of their claim against MJF.  There is no question, however, that we have jurisdiction to address their challenge to the dismissal of their claims against the State Defendants.  As a result, there is no question that we have jurisdiction to address whether the complaint that sets forth those claims plausibly alleged that Maine's IOLTA program compelled the plaintiffs to deposit Wescott's funds in an IOLTA account and that that deposit was sufficiently connected to the speech to which they object.  See, e.g., Kachalsky v. Cnty. of Westchester, 701 F.3d 81, 84 n.2 (2d Cir. 2012) (noting that the court's "jurisdiction is secure" so long as "at least one plaintiff has standing," and declining to address the issue of one of the plaintiff's standing after affirming dismissal).  Thus, because the fatal defect in the complaint that we identified above in affirming the dismissal of the claims against the State Defendants inheres in the complaint as a whole without regard to the particular defendant, we conclude that the plaintiffs' appeal of the District Court's dismissal of their claim against MJF is moot.  See Efron v. Embassy Suits (P.R.), Inc., 223 F.3d 12, 21 (1st Cir. 2000) (finding questions concerning the plaintiff's standing "obviously . . . moot" after concluding that he had failed to allege sufficient facts to state a claim).

**V.**

For the foregoing reasons, we **affirm**.